No. 103,097

STATE OF KANSAS, *Appellee*, v. DEON ANDREW ROSS, *Appellant*.

(289 P.3d 76)

Opinion filed December 7, 2012.

*Lydia Krebs*, of Kansas Appellate Defender Office, argued the cause and was on the briefs for appellant.

*Sherri L. Schuck*, county attorney, argued the cause, and *Steve Six*, attorney general, was with her on the brief for appellee.

The opinion of the court was delivered by

ROSEN, J.: Deon Andrew Ross pled no contest to felony murder and kidnapping. He was sentenced to a hard 20 life sentence for the felony-murder conviction and a consecutive 61-month prison sentence for the kidnapping conviction. He raises several sentencing issues: (1) The district court erred when it imposed lifetime postrelease supervision; (2) the district court erred in ordering him to register under the Kansas Offender Registration Act (KORA), K.S.A. 22-4901 *et seq.*, pursuant to K.S.A. 22-4902(a)(4)(A) (anyone convicted of kidnapping and the victim was less than 18 years of age will be deemed an offender under KORA); (3) the district court erred in ordering him to serve the aggravated sentence in the applicable grid block for his kidnapping conviction; and (4) the district court erred in ordering his sentences to run consecutive to one another.

Based on the analysis below, we conclude that the district court did err in imposing lifetime postrelease supervision. Furthermore, because nothing in the record suggests that Ross' victim was under 18 years of age, the district court erred in ordering registration pursuant to K.S.A. 22-4902(a)(4)(A). We conclude, however, that because Ross' 61-month prison sentence for his kidnapping conviction fell within the applicable grid block, the sentence is considered a presumptive sentence; thus, we lack jurisdiction to review the propriety of the 61-month sentence. Finally, we conclude that an appellate court has jurisdiction to review whether a district court abused its discretion in ordering an on-grid sentence to run consecutive to an off-grid sentence. Based on the facts of this case, we ultimately conclude that the district court did not abuse its discretion in ordering Ross' sentences to run consecutively rather than concurrently.

## FACTUAL BACKGROUND

Pursuant to a plea agreement, Ross pled no contest to felony murder and kidnapping. The State moved to dismiss one count of rape and informed the district court that Shawnee County authorities were satisfied with the plea and would not prosecute any sex-

offense charges related to this case. The district court accepted the plea and found Ross guilty of felony murder and kidnapping.

The district court imposed a life sentence for the felony-murder conviction and a 61-month prison sentence for the kidnapping conviction. The 61-month prison sentence was the aggravated sentence in the applicable grid block for the crime. Relying on the factual basis presented by the State before Ross entered his plea of no contest, the court ordered that the sentence for kidnapping run consecutive to Ross' life sentence. Based on Ross' kidnapping conviction, the district court imposed 36 months' postrelease supervision and informed Ross that he would be required to register under KORA.

The district court's journal entry of judgment reflects the sentence imposed at sentencing. The journal entry shows felony murder as the primary offense, with a "Life—Minimum 20 yrs." sentence imposed for the off-grid conviction and a 61-month sentence for the additional crime of kidnapping. Just as the district court stated at sentencing, the journal entry includes a 36-month term of postrelease supervision for the kidnapping charge.

Several months after sentencing, the Kansas Department of Corrections sent a letter to the court, the prosecutor, and defense counsel stating that the Sentence Computation Unit believed lifetime postrelease supervision was appropriate because Ross was convicted of an off-grid crime. The State prepared a nunc pro tunc order, which the court signed, changing the period of postrelease supervision from 36 months to lifetime.

## POSTRELEASE SUPERVISION

Ross argues that the district court lacked jurisdiction to impose lifetime postrelease supervision. Accordingly, he contends that we should vacate his sentence and remand with directions that the district court reinstate the 36-month postrelease supervision term that it originally imposed at sentencing.

"Courts are permitted to correct illegal sentences at any time. [Citations omitted.] Whether a sentence is illegal is an issue of statutory interpretation and subject to unlimited review as a ques-

tion of law. [Citation omitted.]" *State v. Cash*, 293 Kan. 326, 330, 263 P.3d 786 (2011).

*Analysis*

Ross was convicted of felony murder, an off-grid felony; therefore, under K.S.A. 2008 Supp. 22-3717(b)(2), he "shall be eligible for parole after serving 20 years of confinement without deduction of any good time credits." Ross' conviction for kidnapping, standing alone, would include a mandatory 36-month period of postrelease supervision. See K.S.A. 2008 Supp. 22-3717(d)(1)(A). We must determine whether the district court could impose a 36-month term of postrelease supervision under these circumstances. This issue turns on whether the phrase "postrelease supervision" in K.S.A. 21-4720(b) refers only to mandatory postrelease supervision imposed for convictions of on-grid crimes or whether the term refers more broadly to the supervision that follows any term of imprisonment, be it parole or postrelease supervision.

In *State v. Torres*, No. 99,308, 2009 WL 862166 (Kan. 2009) (unpublished opinion), we reviewed the sentences imposed for felony murder, criminal discharge of a firearm at an occupied building, and aggravated assault. Like Ross, defendant Oscar Torres had both off-grid and on-grid convictions. Considering whether the postrelease supervision term of 36 months imposed by the district court was valid, this court stated:

"[I]mposing a 36-month postrelease supervision period was also contrary to K.S.A. 21-4720(b)(2), which provides: 'If sentences for off-grid and on-grid convictions are ordered to run consecutively, the offender shall not begin to serve the on-grid sentence until paroled from the off-grid sentence, and the postrelease supervision term will be based on the off-grid crime.' (Emphasis added.) The statute further states that the postrelease periods 'will reflect only the longest . . . term assigned to any' of the consecutive sentences and 'will not be aggregated.' K.S.A. 21-4720(b)(4). In Kansas, off-grid crimes are not associated with periods of postrelease supervision but instead are followed by life parole. See K.S.A. 22-3717(b)(2). K.S.A. 21-4720 makes it clear that in cases (as here) where a defendant is being sentenced for both off-grid and on-grid crimes, the court only has authority to impose the supervision period associated with the off-grid crime. In other words, a court must impose life parole.

"Because the district court did not have authority to impose a postrelease period of less than life parole, the total duration of Torres' sentences does not conform

to the requirements of K.S.A. 21-4720. See *State v. McCarley*, 287 Kan. 167, 175, 195 P.3d 230 (2008) (this court has jurisdiction to remand for correction of an illegal sentence even when the resultant sentence would be more severe than that originally imposed). As such, Torres' sentences are illegal and must be vacated." *Torres*, 2009 WL 862166, at *3.

We believe that *Torres* was correctly decided; however, we take this opportunity to expand and clarify the reasoning behind the decision.

"Interpretation of a statute raises a question of law over which an appellate court has unlimited review. The most fundamental rule is that the intent of the legislature governs if that intent can be ascertained. An appellate court must first attempt to ascertain legislative intent through the statutory language enacted, giving common words their ordinary meanings. When a statute is plain and unambiguous, an appellate court does not speculate as to the legislative intent behind it and will not read into the statute something not readily found in it. Where there is no ambiguity, the court need not resort to statutory construction. Only if the statute's language or text is unclear or ambiguous does the court use canons of construction or legislative history or other background considerations to construe the legislature's intent." *State v. Comprehensive Health of Planned Parenthood*, 291 Kan. 322, Syl. ¶ 3, 241 P.3d 45 (2010).

### 1. *What is postrelease supervision?*

Parole and postrelease supervision are governed by K.S.A. 2008 Supp. 22-3717. On-grid sentences consist of a prison term followed by a mandatory period of postrelease supervision. K.S.A. 2008 Supp. 22-3717(d)(1) ("Persons sentenced for crimes, other than off-grid crimes, committed on or after July 1, 1993, or persons subject to subparagraph [G], will not be eligible for parole, but will be released to a mandatory period of postrelease supervision upon completion of the prison portion of their sentence . . . .") The term of mandatory postrelease supervision under K.S.A. 2008 Supp. 22-3717(d) does not apply to off-grid crimes. Off-grid crimes consist of a mandatory term of imprisonment followed by parole eligibility. K.S.A. 2008 Supp. 22-3717(b). The district court has no jurisdiction to enter a term of postrelease supervision for an off-grid conviction. *Cash*, 293 Kan. at 330-31.

"If sentences for off-grid and on-grid convictions are ordered to run consecutively, the offender shall not begin to serve the on-grid sentence until paroled from the off-grid sentence, and the *post-*

*release supervision term* will be based on the off-grid crime." (Emphasis added.) K.S.A. 21-4720(b)(2). This section is nonsensical if the phrase "postrelease supervision term" in K.S.A. 21-4720(b)(2) refers to a period of postrelease supervision under K.S.A. 2008 Supp. 22-3717(d) because, as noted above, off-grid crimes are followed by parole under K.S.A. 2008 Supp. 22-3717(b). Accordingly, the phrase, "postrelease supervision term" in K.S.A. 21-4720(b)(2) must refer more generally to the supervision period that follows the defendant's release from prison, regardless if that is termed "parole" or "postrelease." Thus, after serving a minimum 20 years' imprisonment Ross is subject to the possibility of lifetime parole based on the felony-murder conviction, rather than lifetime postrelease supervision.

### 2. *Use of "postrelease supervision" in K.S.A. 21-4720(b)*

When a statute's meaning is not clear from its plain language, we often consider the provisions of the entire act with a view toward reconciling and bringing them into harmony if possible. *State v. Raschke*, 289 Kan. 911, 914, 219 P.3d 481 (2009). Sentencing in multiple conviction cases is governed by K.S.A. 21-4720. The phrase "postrelease supervision" is used several times in K.S.A. 21-4720(b). We consider each of these references to determine the intent of the legislature in sentencing multiple conviction cases.

K.S.A. 21-4720(b)(1) provides: "The postrelease supervision term will be based on the longest supervision term imposed for any of the crimes."

K.S.A. 21-4720(b)(2) provides: "If sentences for off-grid and on-grid convictions are ordered to run consecutively, the offender shall not begin to serve the on-grid sentence until paroled from the off-grid sentence, and the postrelease supervision term will be based on the off-grid crime."

K.S.A. 21-4720(b)(4) provides: "The postrelease supervision term will reflect only the longest such term assigned to any of the crimes for which consecutive sentences are imposed."

K.S.A. 21-4720(b)(7) provides: "If the sentence for the consecutive sentences is a prison term, the postrelease supervision term is a term of postrelease supervision as established for the primary

crime." Referring back to K.S.A. 21-4720(b)(2), "[t]he primary crime is the crime with the highest crime severity ranking."

Reading the entire statute as a coherent whole, it is clear that the legislature intended to impose the longest term of supervision provided for any of the convictions in a multiple conviction case. Consistent with this intent, the term "postrelease supervision" must mean any supervision that follows the defendant's release from a prison sentence. It need not strictly refer to the mandatory term of postrelease supervision created in K.S.A. 22-3717(d), which applies to sentences for on-grid crimes.

### 3. *Application*

As a practical matter, it is unlikely the legislature intended to subject a defendant who was convicted of one off-grid crime to lifetime parole while subjecting a defendant convicted of one off-grid crime and one on-grid crime to the shorter term of postrelease supervision required by K.S.A. 2008 Supp. 22-3717(d). This is an unreasonable result and, accordingly, we construe K.S.A. 21-4720(b)(2) to mean that the period of supervision following the defendant's release from prison—after serving sentences for off-grid and on-grid crimes—is based on the supervision imposed for the off-grid crime. See *State v. Trautloff*, 289 Kan. 793, 797, 217 P.3d 15 (2009) ("[C]ourts should read statutes to avoid unreasonable results and should presume that the legislature does not intend to enact useless or meaningless legislation.").

Because Ross received an off-grid life sentence for felony murder, his prison term should be followed by lifetime parole. The postrelease supervision imposed by the trial court is vacated.

### REGISTRATION

At sentencing, the district court informed Ross that he would be required to register under KORA, but the court did not indicate which section of KORA required Ross to register. Subsequently, the journal entry of sentencing indicated that Ross was required to register under KORA pursuant to K.S.A 2008 Supp. 22-4902(a)(2) (anyone convicted of felony murder will be deemed a violent offender under KORA) and K.S.A. 2008 Supp. 22-4902(a)(4)(A) (an-

yone convicted of kidnapping and the victim was less than 18 years of age will be deemed an offender under KORA).

The parties agree that Ross is required to register under K.S.A. 2008 Supp. 22-4902(a)(2) because he was convicted of felony murder. Similarly, the parties agree that Ross is not required to register under K.S.A. 2008 Supp. 22-4902(a)(4) because the victim was 18 years old.

K.S.A. 22-3504(2) provides: "Clerical mistakes in judgments, orders or other parts of the record and errors in the record arising from oversight or omission may be corrected by the court at any time and after such notice, if any, as the court orders."

K.S.A. 2011 Supp. 60-260(a) provides:

"The court may correct a clerical mistake or a mistake arising from oversight or omission whenever one is found in a judgment, order or other part of the record. The court may do so on motion, or on its own, with or without notice. But after an appeal has been docketed in the appellate court and while it is pending, such a mistake may be corrected only with the appellate court's leave."

Because nothing in the record suggests that the victim was under the age of 18, we remand to the district court with instructions that it issue a nunc pro tunc order deleting the provision that Ross must register under KORA pursuant to K.S.A. 22-4902(a)(4)(A). Because Ross is still required to register under KORA pursuant to K.S.A 22-4902(a)(2), this change will merely correct a mistake arising from an oversight and not change Ross' sentence. Accordingly, he does not need to be present in court for the change to go into effect.

### AGGRAVATED SENTENCE IN THE GRID BLOCK

Ross argues that it was error for the district court to sentence him to the aggravated sentence in the applicable grid block for the kidnapping conviction without a jury finding the aggravating factors. Ross acknowledges that this court has previously decided this issue but raises it to preserve it for federal review. As we noted in *State v. Johnson*, 286 Kan. 824, Syl. ¶ 6, 190 P.3d 207 (2008), "[u]nder K.S.A. 21-4721(c)(1), an appellate court is without jurisdiction to consider a challenge to a presumptive sentence, even if that sentence is to the highest term in a presumptive grid block."

Thus, we conclude that we lack jurisdiction to address the merits of Ross' argument.

CONSECUTIVE SENTENCES

Ross argues that the district court abused its discretion when it denied his request to run his sentences for felony murder (an off-grid crime) and kidnapping (an on-grid crime) concurrently and instead ordered the sentences be served consecutively. We must first address whether we have jurisdiction to address this issue. Whether jurisdiction exists is a question of law over which this court's scope of review is unlimited. *State v. Ellmaker*, 289 Kan. 1132, 1147, 221 P.3d 1105 (2009).

In *State v. Ware*, 262 Kan. 180, 938 P.2d 197 (1997), defendant Gregory Ware pled guilty to murder (an off-grid crime) and aggravated robbery, a severity level 3 person felony. Ware was sentenced to life for the murder conviction and a consecutive 49-month term of imprisonment, the mid-range presumptive sentence, for the aggravated robbery conviction. On appeal, Ware claimed the district court abused its discretion in running his sentences consecutively. This court did not reach the merits of Ware's argument because we assumed that Ware had received a "presumptive sentence" as contemplated in K.S.A. 21-4721(c)(1) and, thus, we were statutorily prevented from reviewing his sentence. Specifically, we stated that "[t]he imposition of consecutive sentences is not inconsistent with presumptive sentences and does not constitute the imposition of a departure sentence. The issue raised by the defendant is not an appealable issue. Accordingly, the appeal must be dismissed for lack of jurisdiction." *Ware*, 262 Kan. at 184.

Similarly, in *State v. Flores*, 268 Kan. 657, 999 P.2d 919 (2000), defendant Rafael Flores appealed the district court's decision to impose consecutive sentences of life and 34 months' imprisonment for Flores' convictions of first-degree felony murder (an off-grid crime) and attempted voluntary manslaughter, a severity level 5 person felony. Based on *Ware*, we dismissed Flores' appeal for lack of jurisdiction because we again assumed that Flores had received a presumptive sentence within the meaning of K.S.A. 21-4721(c)(1) and that the imposition of consecutive sentences did

not constitute a departure sentence, which is reviewable under K.S.A. 21-4721(e)(1). *Flores*, 268 Kan. at 658-60.

Based on more recent decisions from this court, it is clear that both *Ware* and *Flores* failed to recognize that the term "presumptive sentence," as used in the Kansas Sentencing Guidelines Act (KSGA), does not encompass life sentences for off-grid crimes. In *State v. Ortega-Cadelan*, 287 Kan. 157, 164, 194 P.3d 1195 (2008), we held that we had jurisdiction to consider whether the district court abused its discretion in denying a criminal defendant's motion to depart from the hard 25 life sentence imposed pursuant to K.S.A. 2006 Supp. 21-4643(a). We reached this conclusion by noting that a life sentence was not a "presumptive sentence" within the meaning of K.S.A. 21-4721(c)(1) and was, therefore, reviewable on appeal. We stated:

"The Kansas Sentencing Guidelines Act (KSGA), K.S.A. 21-4701 *et seq.*, defines a defendant's right to appeal from his or her sentence and, as applicable to this issue, provides that 'the appellate court shall not review: (1) Any sentence that is within the presumptive sentence for the crime.' K.S.A. 21-4721(c)(1). The KSGA defines 'presumptive sentence' as 'the sentence provided in a grid block for an offender classified in that grid block by the combined effect of the crime severity ranking of the current crime of conviction and the offender's criminal history.' K.S.A. 21-4703(q). Ortega-Cadelan's sentence does not meet the K.S.A. 21-4703 definition of 'presumptive sentence,' as his sentence was not issued pursuant to a number in a grid block. Under the circumstances of this case, the KSGA grid was inapplicable. Moreover, K.S.A. 2006 Supp. 21-4706(d) characterizes Ortega-Cadelan's offense as an 'off-grid [crime] for the purposes of sentencing.' Thus, the State's jurisdictional argument is misguided; we hold that this court has jurisdiction to review a sentence imposed pursuant to K.S.A. 2006 Supp. 21-4643(a)." *Ortega-Cadelan*, 287 Kan. at 163-64.

Based on our holding in *Ortega-Cadelan*, we later held in *State v. Frecks*, 294 Kan. 738, 741, 280 P.3d 217 (2012), that because a life sentence for an off-grid crime is not considered a "presumptive sentence" under the KSGA, K.S.A. 21-4721(c)(1) does not bar appellate review of whether a district court abused its discretion by ordering life sentences for off-grid crimes to run consecutively rather than concurrently.

*Ortega-Cadelan* and *Frecks* clearly establish that a life sentence for an off-grid crime is not a "presumptive sentence" as contem-

plated in K.S.A. 21-4703(q) because imposition of the life sentence was not arrived at by applying the applicable grid block of the sentencing guidelines. Accordingly, when a defendant is convicted of both an off-grid crime and an on-grid crime and the district court orders the presumptive sentence for the on-grid crime to run consecutive to the life sentence for the off-grid crime, the resulting controlling sentence is not entirely a "presumptive sentence" as defined in K.S.A. 21-4703(q). Thus, K.S.A. 21-4721(c) does not prevent a defendant from challenging a district court's decision ordering that a sentence for an on-grid crime run consecutive to a life sentence for an off-grid crime in a multiple conviction case involving both off-grid and on-grid crimes. As such, we disapprove of the contrary holdings found in *Ware* and *Flores* and conclude that we may review whether the district court here abused its discretion by ordering Ross' life sentence for felony murder and his 61-month prison sentence for kidnapping to run consecutively instead of concurrently.

"Generally, it is within the trial court's sound discretion to determine whether a sentence should run concurrent with or consecutive to another sentence." *State v. Jamison*, 269 Kan. 564, 576, 7 P.3d 1204 (2000). In *State v. Ward*, 292 Kan. 541, 550, 256 P.3d 801 (2011), *cert. denied* 132 S. Ct. 1594 (2012), we stated the standard for determining whether a district court abused its discretion:

"Judicial discretion is abused if judicial action (1) is arbitrary, fanciful, or unreasonable, *i.e.*, if no reasonable person would have taken the view adopted by the trial court; (2) is based on an error of law, *i.e.*, if the discretion is guided by an erroneous legal conclusion; or (3) is based on an error of fact, *i.e.*, if substantial competent evidence does not support a factual finding on which a prerequisite conclusion of law or the exercise of discretion is based."

Ross argues that the district court abused its discretion by ordering the sentences to run consecutive to one another because (1) he had no prior criminal history, and (2) his sentence for felony murder already required him to serve 20 years before he would be eligible for parole. Before imposing consecutive sentences, the district court considered the suffering of the young woman during the kidnapping, Ross' lack of compassion for the victim, and the extent

of harm to the family of the victim. Based on the facts of this case, a reasonable person could conclude that consecutive sentences were appropriate. Accordingly, we cannot say that the district court abused its discretion by imposing consecutive sentences.

Sentence vacated in part and remanded with directions.