IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 117,305

STATE OF KANSAS,
*Appellee*,

v.

STEVEN WADE EDWARDS,
*Appellant.*

SYLLABUS BY THE COURT

1.

A sentencing court has no authority to order a term of lifetime postrelease supervision for a conviction of first-degree felony murder.

2.

When there is a discrepancy between a court's oral ruling to waive a Board of Indigents' Defense Services (BIDS) administrative fee and the written journal entry, the judge's oral instruction from the bench controls. An error in the journal entry concerning a BIDS administrative fee waiver is a clerical mistake that may be corrected at any time.

3.

In this case, the evidence of defendant's dissatisfaction with his counsel is insufficient to establish good cause to withdraw a guilty plea.

Appeal from Sedgwick District Court; JEFFREY E. GOERING, judge. Opinion filed May 10, 2019. Affirmed in part, vacated in part, and remanded with directions.

*Jennifer C. Roth*, of Kansas Appellate Defender Office, argued the cause and was on the brief for appellant.

*Lesley A. Isherwood*, assistant district attorney, argued the cause, and *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, were with her on the brief for appellee.

The opinion of the court was delivered by

STEGALL, J.: Steven Wade Edwards pled guilty to two counts of felony murder, one count of aggravated burglary, and one count of aggravated robbery. Edwards subsequently moved to withdraw his plea. The district court denied Edwards' motion and sentenced him to two concurrent life sentences for the killings and a total of 141 additional months' incarceration for the lesser crimes. The court also ordered a lifetime period of postrelease supervision and waived both the Board of Indigents' Defense Services (BIDS) attorney fees and BIDS administrative fee. We affirm the district court's denial of Edwards' motion to withdraw plea, but we vacate the lifetime postrelease supervision portion of his sentence and remand with instructions to impose lifetime parole and to correct the clerical error in the journal entry regarding the BIDS administrative fee.

## FACTUAL AND PROCEDURAL BACKGROUND

Steven Edwards was charged with two counts of capital murder, aggravated burglary, aggravated robbery, burglary, felony theft, and criminal possession of a firearm for his role in the October 16, 2014, killing of Martha Lopez Moreno and Godofredo Moreno-Lopez. The district court found Edwards indigent at his first appearance and appointed two experienced public defenders as counsel.

Several months after being charged, Edwards filed a pro se motion asking the court to appoint new counsel. Edwards gave four reasons in support of his motion:

(1) Edwards' attorneys neglected to share discovery with him; (2) Edwards and his counsel had "yet to agree upon anything"; (3) counsel told him numerous times he would be unsuccessful at trial; and (4) counsel brought Edwards' mother to jail to persuade him to take a plea deal.

The district court subsequently held a hearing on Edwards' motion for new counsel. Edwards informed the court he was not comfortable with his counsel based on their discussions with him about taking a plea, their predictions of a trial outcome, and the lack of discovery provided to him while in jail. Edwards believed counsel was only interested in taking a plea deal rather taking the case to trial—despite Edwards telling counsel he did not want to plead.

Defense counsel provided a compelling explanation for their management of Edwards' case. First, counsel explained they did review discovery with Edwards but did not comply with Edwards' requests to keep copies of discovery in his cell. A large portion of discovery contained witness testimony of "extremely incriminating statements" made by Edwards. Counsel believed it was in Edwards' best interest not to have a copy of those statements while in jail.

Next, counsel denied allegations of pressuring Edwards to plead. Counsel informed the court that, while they did have discussions with Edwards about the possibility of entering into plea negotiations, Edwards' mother had no part in this. The mother's visit was an effort to help Edwards see the larger picture of his case. Counsel also informed Edwards "over and over" that Edwards had the power to decide "whether or not to have a preliminary hearing, whether or not to go to trial," and "whether or not to testify at that trial."

The court ultimately denied Edwards' motion. The court found no reason to dismiss Edwards' counsel and expressed concern that, if other counsel was appointed,

such counsel would not be certified to try a capital murder case as were Edwards' current attorneys. The court also found that any attorney would have handled the issues raised by Edwards in a similar manner and, above all, would have the same ethical obligation to communicate their assessment of the strength of the case and offers by the State.

Edwards returned to court about seven months later to enter a guilty plea. As a result of plea negotiations, the State amended its charges in return for Edwards' plea of guilty to two counts of felony murder, one count of aggravated burglary, and one count of aggravated robbery.

The court reviewed the plea agreement with Edwards. Edwards confirmed he fully understood the proceedings and that there was no reason for the court to reject his guilty pleas. The court also asked Edwards whether he was "[o]n the whole" satisfied with the services provided by his attorneys. Edwards answered by stating "[n]ot really, but all right." This response led the court to inquire whether Edwards' dissatisfaction with his attorneys adversely affected his ability or desire to enter his plea. At this time, a short recess commenced to allow Edwards to speak with his attorneys. After Edwards spoke with his attorneys, the court again asked Edwards whether the pleas being offered were voluntary despite any issues he may have had with his attorneys. Edwards continued to assure the court he was entering the pleas voluntarily and that he believed pleading guilty was in his best interest.

About two weeks later, Edwards sent a letter to the district court followed by a pro se motion to withdraw his pleas. Edwards argued he signed the pleas under duress, suggesting his pleas were "the result of manipulation and lies orchestrated by his attorney." Edwards also stated his counsel could not effectively represent him because Edwards engaged in unlawful sexual encounters with one of his defense attorneys.

The court appointed new counsel for Edwards. Edwards' new lawyer moved to set aside Edwards' pleas, arguing the existence of good cause. Edwards contended his previous counsel was compromised by Edwards' sexual relationship with one of the attorneys; that the pleas were a product of undue influence; that there was no real bargain to his pleas; and that there was no preliminary hearing or factual basis given at the plea hearing.

The court conducted a hearing on the motion to withdraw Edwards' pleas, where Edwards and his former attorneys testified. Edwards testified that even though the State may seek the death penalty, he still wanted to withdraw his pleas and go to trial. Edwards' testimony mirrored the arguments set forth in his motion to withdraw his pleas, focusing mainly on the pressure brought by his attorneys to take the pleas. Edwards felt his attorneys failed to put forth any effort in defending him and were only interested in talking about Edwards pleading guilty. Edwards again mentioned counsel bringing his mother into jail to persuade him to take a plea bargain, the lack of pretrial motions filed on his behalf, and the existence of a sexual relationship between him and one of his lawyers. Finally, Edwards testified the following conversation took place during his plea hearing when the court provided a brief recess:

> "I told [him] that I didn't want to take the plea bargain, and I was like, Can you get a continuance? And he was like, You need to take this plea bargain. He was like, The victims have family here. I don't think they'll let you take it afterwards. And then he asked Judge Goering if we could go back there and talk."

Both of Edwards' original attorneys testified that Edwards' allegations about sexual misconduct were completely unfounded, and, at times, Edwards seemed uninterested in visiting with his attorneys about his case. The attorneys stated their primary goal was to save Edwards from the death penalty. In an effort to do so, they collected a large amount of information for mitigation during the penalty phase of trial.

But discovery produced significant incriminating evidence against Edwards and no exculpatory evidence. For this reason, the attorneys felt it was appropriate to discuss the possibility of entering into plea negotiations with the State.

The lack of exculpatory evidence caused counsel to focus on mitigation in order to persuade the State to take the death penalty off the table. Edwards' mother played a crucial role in providing information counsel could use in mitigation. Edwards' mother, however, did not take part in discussing plea deals with Edwards. Edwards' mother did not visit Edwards to coerce him into taking a plea deal as alleged because, at the time, there was no plea offered. Edwards' mother visited early on in the litigation process before any plea negotiations had taken place.

After hearing arguments and reviewing the evidence, the court conducted a "good cause" analysis under the three factors set forth in *State v. Edgar*, 281 Kan. 30, Syl. ¶ 2, 127 P.3d 986 (2006) (holding that the trial court "should evaluate whether:  [1] the defendant was represented by competent counsel, [2] the defendant was misled, coerced, mistreated, or unfairly taken advantage of, and [3] the plea was fairly and understandingly made").

First, the court held Edwards failed to present any evidence of attorney incompetence and found overwhelming evidence supporting the competency of Edwards' attorneys. Under the second *Edgar* factor, the court held Edwards was not misled, coerced, mistreated, or unfairly taken advantage of. The court found that Edwards had plenty of opportunity to tell the court he felt pressured to take the plea. There was no evidence in the record that Edwards did not understand what his sentencing range was, what his rights were, or that he had the right to trial. Nothing suggested Edwards was mistreated in any way or that anyone took unfair advantage of him when negotiating his plea. Moreover, when Edwards expressed dissatisfaction with his attorneys, the court specifically ensured his dissatisfaction did not affect his decision to plead. Thus, the court

held Edwards failed to present evidence fulfilling the second *Edgar* factor. Finally, the court evaluated Edwards' claim of sexual misconduct. The court did not find the allegations of sexual misconduct credible and, as a result, Edwards was not entitled to relief.

After denying Edwards' motion to withdraw his guilty plea, the court proceeded to sentence Edwards. Edwards appeals directly to this court pursuant to K.S.A. 2018 Supp. 22-3601(b)(3).

ANALYSIS

Edwards makes three claims on appeal: (1) the district court erred in denying his motion to withdraw his plea; (2) the district court had no authority to order lifetime postrelease supervision; and (3) the journal entry must be corrected to show that the district court waived the BIDS administrative fee. The State concedes the final two claims and we address them briefly first.

From the bench, the district court ordered lifetime postrelease supervision for Edwards' primary offense of first-degree felony murder. But this was error. *State v. Summers*, 293 Kan. 819, Syl. ¶ 6, 272 P.3d 1 (2012) (stating that "[a] sentencing court has no authority to order a term of postrelease supervision in conjunction with an off-grid, indeterminate life sentence"). Instead of lifetime postrelease supervision, Edwards was subject to lifetime parole. *State v. Ross*, 295 Kan. 1126, 1134, 289 P.3d 76 (2012) (stating that because the defendant "received an off-grid life sentence for felony murder, his prison term should be followed by lifetime parole" instead of lifetime postrelease supervision); see *State v. Potts*, 304 Kan. 687, 709, 374 P.3d 639 (2016) ("the appropriate remedy is to vacate the lifetime postrelease supervision period that the district court imposed and remand the case for resentencing with instructions that the district court impose lifetime parole for the felony-murder"). As such, the lifetime postrelease

supervision ordered from the bench is vacated and this case is remanded for the imposition of lifetime parole.

At Edwards' sentencing, the district court also stated that "[g]iven the sentence imposed in this case, it's pointless to assess BIDS fees, so I'll waive the BIDS fees, as well as the administrative fee." The journal entry, however, reflects that a $100 BIDS administration fee was assessed. During sentencing, the judge's oral pronouncement is controlling, not the journal entry. *Potts*, 304 Kan. at 707-08. Thus, any journal entry variance from a judge's oral pronouncement during sentencing is a clerical error that may be corrected at any time. *State v. Mason*, 294 Kan. 675, 677, 279 P.3d 707 (2012) ("The journal entry of sentencing can be corrected by a nunc pro tunc order so that it reflects the actual sentence pronounced from the bench, which was a legal sentence."); K.S.A. 2018 Supp. 22-3504(2) ("Clerical mistakes in judgments, orders, or other parts of the record . . . may be corrected by the court at any time . . . ."). The district court is therefore ordered to correct the journal entry to properly reflect the waiver of BIDS fees.

Turning now to the contested portion of this appeal, we are asked to review the district court's denial of Edwards' motion to withdraw his guilty plea. A district court may allow a defendant to withdraw a guilty or nolo contendere plea for good cause any time before sentencing. K.S.A. 2018 Supp. 22-3210(d)(1). We review such decisions for abuse of discretion. *State v. DeAnda*, 307 Kan. 500, 503, 411 P.3d 330 (2018); *State v. Schaal*, 305 Kan. 445, 449, 383 P.3d 1284 (2016). In determining whether the defendant has shown good cause, the court should consider three factors:  (1) whether the defendant was represented by competent counsel; (2) whether the defendant was misled, coerced, mistreated, or unfairly taken advantage of; and (3) whether the plea was fairly and understandingly made. *Edgar*, 281 Kan. at 36. These factors establish "'viable benchmarks'" for the district court when exercising its discretion, but the court should not ignore other facts that might exist in a particular case. *State v. Schaefer*, 305 Kan. 581, 588, 385 P.3d 918 (2016). To the extent the lower court's exercise of discretion is

8

informed by findings of fact, a reviewing appellate court will not reweigh evidence or reassess witness credibility. *DeAnda*, 307 Kan. at 503.

On appeal, Edwards relies exclusively on the second *Edgar* factor by claiming he was coerced into taking his plea. Specifically, Edwards argues that (1) his attorneys themselves, as well as through his mother, pressured him into taking the plea deal; and (2) his attorneys did not try to defend Edwards in any way other than through plea negotiations.

Edwards fails to present any additional evidence not considered by the district court in denying his motion. Instead, Edwards asks us to reweigh the same evidence presented to the district court and come to a different conclusion. But the district court already weighed the evidence and credibility of testimony given by Edwards and his former attorneys. The court found that the evidence weighed in favor of Edwards' plea being voluntary. The court found Edwards had not been misled, coerced, mistreated, or unfairly taken advantage of. And Edwards fails to present any evidence that the district court's view could not be adopted by a reasonable person; that its decision was based on an error of law; or that its decision was based on an error of fact.

The only new argument presented by Edwards is his objection to the following comments made by the court during its ruling:

> "So it's not that I don't have significant discretion to set aside a guilty plea. I understand that I do. It's that I can't just set aside a guilty plea because Mr. Edwards has changed his mind. There has to be something that fits in these *Edgar* factors for me to say, Okay, well, we're withdrawing this plea. Especially in light of the fact that this was a case that was—there was a codefendant, the State made decisions based on whether to offer the codefendant pleas, made decisions on how the disposition of that case should be resolved. I don't know that any of that would prevent me from allowing Mr. Edwards to withdraw his guilty plea if the *Edgar* factors were present, but it does suggest that if the

9

*Edgar* factors are not present, I shouldn't be free in the exercise of discretion simply because it's a no-harm/no-foul kind of thing. What difference does it make? He gets his trial. If he loses and he gets life without the possibility of parole, well, that's what he's asked for. Well, the harm is that these cases were disposed of in tandem.

"And so I do think in the absence of some evidence to hang on the *Edgar* factors, there is an element of abuse of judicial discretion for me to just simply say, Okay, it's presentencing, the standard is low. He gets what he wants, and we move on down the road. So for those reasons the motion will be denied."

In response, Edwards argues:

"[T]he law on plea withdrawals does not have a 'the State disposed of cases in tandem' factor. The State admitted this was not the standard, but argued it nonetheless. All three *Edgar* factors deal specifically with the defendant in that defendant's case. They do not deal with how the State handles plea negotiations. Furthermore, if Mr. Edwards' plea was set aside, he would be facing much worse consequences than his co-defendant ever was (as a juvenile, he was not eligible for the death penalty)."

Edwards is correct that the State's motivation for offering any particular plea bargain is not a relevant consideration in the context of the *Edgar* factors. But the district court expressly confined itself to the *Edgar* factors when deciding Edwards' motion. The court's discussion of possible prejudice to the State was discussed only after the court found the *Edgar* factors were not present, and only to say that in the absence of the *Edgar* factors, the court was not "free in the exercise of discretion simply because it's a no-harm/no-foul kind of thing." We find no error in this statement.

Edwards has failed to demonstrate any abuse of discretion. The district court's decision to deny Edwards' motion to withdraw his guilty plea is affirmed.

Affirmed in part, vacated in part, and remanded with instructions.