IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 116,151

STATE OF KANSAS,
*Appellee*,

v.

CHARLES D. SATCHELL,
*Appellant.*

SYLLABUS BY THE COURT

1.

When a defendant is accused of a sex offense, evidence that the defendant has committed another act or offense of sexual misconduct is generally admissible to show the defendant's propensity to engage in such conduct under K.S.A. 2019 Supp. 60-455(d).

2.

Otherwise admissible evidence may be excluded if the risk of undue prejudice from its admission substantially outweighs its probative value.

3.

In considering the probative value of evidence of other acts of sexual misconduct, the district court should consider (1) how clearly the prior acts were proved; (2) how probative the evidence is of the material fact sought to be proved; (3) how seriously disputed the material fact is; and (4) whether the government can obtain any less-prejudicial evidence.

4.

In considering the risk of undue prejudice from evidence of other acts of sexual misconduct, the district court should consider (1) the likelihood that the evidence will contribute to an improperly based jury verdict; (2) whether the evidence will distract the jury from the central trial issues; and (3) how time consuming the evidence will be.

5.

When the district court sentences a defendant to consecutive on-grid and off-grid sentences, K.S.A. 2016 Supp. 21-6627 provides that the proper postrelease supervision term is lifetime parole.

Review of the judgment of the Court of Appeals in an unpublished opinion filed December 15, 2017. Appeal from Sedgwick District Court; JEFFREY SYRIOS, judge. Opinion filed June 26, 2020. Judgment of the Court of Appeals affirming in part and vacating in part the judgment of the district court is affirmed in part and reversed in part. Judgment of the district court is affirmed in part and vacated in part.

*Caroline M. Zuscheck*, of Kansas Appellate Defender Office, argued the cause and was on the brief for appellant.

*Lesley A. Isherwood,* assistant district attorney, argued the cause, and *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, were with her on the brief for appellee.

The opinion of the court was delivered by

LEBEN, J.: Charles Satchell appeals his convictions of several sex offenses involving two children. He contends that the district court should not have allowed the State to present evidence that he had sexually abused three other children under similar circumstances.

But Kansas law allows the State to present evidence of similar prior sexual offenses to show a person's propensity to engage in that conduct. And although such evidence may be excluded if the potential for undue prejudice substantially outweighs its probative value, that wasn't the case here. All five children knew each other, and the circumstances of the events had many similarities. We find no error in the district court's decision to allow that evidence to be presented to the jury.

Satchell also raises an issue about the district court's decision to order two different forms of supervision once he finishes serving his prison sentence. We agree with him that only one of them should have been ordered, and we will vacate the district court's order of lifetime postrelease supervision.

FACTUAL AND PROCEDURAL BACKGROUND

The State charged Satchell with sex offenses for engaging in acts with two children, D.S. and Z.S., who are brothers. Satchell was convicted in a jury trial of nine charges: five counts of aggravated criminal sodomy, two counts of aggravated indecent liberties, one count of rape, and one count of criminal sodomy. The State alleged these acts took place between August 2010 and July 2014. At the time, D.S. and Z.S. would have been between 7 and 15 years old.

An important part of the State's case was evidence that Satchell had also sexually abused two boys, T.L. and A.C., and one girl, A.L., during the summer of 2010. At that time, T.L. was 8 and A.L. and A.C. were 7. A.L. and T.L. are siblings and the cousins of D.S. and Z.S. To protect the identities of these children, we're using only their initials, and we'll refer to the family and friends who testified about them by their first names. See Supreme Court Rule 7.043(c) (2020 Kan. S. Ct. R. 48).

3

The State argued that the event involving A.L., T.L., and A.C. showed that Satchell had a propensity to sexually abuse children. All three of those children had said that Satchell had touched their private parts in a swimming pool that summer while they were at D.S. and Z.S.'s house. A.C. also claimed that Satchell had touched his penis twice that summer at his house. Based on the statements of these children, the State had charged Satchell with sex offenses, but it later agreed to drop those charges under a plea deal. Satchell pleaded no contest to aggravated battery against A.L. and child endangerment against T.L.

Evidence about Satchell's abuse of these other children was allowed under K.S.A. 2019 Supp. 60-455(d), which provides that "evidence of the defendant's commission of another act or offense of sexual misconduct is admissible[] and may be considered for its bearing on any matter to which it is relevant and probative." Before trial, the State asked the district court to find that this evidence was admissible to show that Satchell had the propensity to sexually abuse children. Satchell argued that the evidence should not be admitted because it would be unduly prejudicial to him, but the district court allowed its admission.

The State presented 11 witnesses at trial. The first six testified about the current charges, then five others testified about the 2010 allegations. But in part because the victims were related, mention of the 2010 allegations was interspersed throughout—five of the six witnesses to the current charges also mentioned the 2010 allegations or information about A.L., T.L., and A.C. The main issue in this appeal is whether the district court erred by admitting testimony about the 2010 allegations, so we need to set out the trial testimony that frames consideration of that legal issue.

The first witness was police officer Tammie Doshier. She had responded to a 911 call from D.S. and Z.S.'s mother, Angela. Doshier said that Angela reported that D.S. and Z.S. had each said that Satchell had sexually abused them.

4

The next witness was Angela. She explained that she and her children had met Satchell when he was dating one of her friends, a woman named Kylie. Satchell and Kylie would attend barbeques at Angela's house, and Satchell would play in the pool with D.S. and Z.S. At some point, Angela's family moved, and her sons then saw Satchell almost daily because he lived nearby. D.S. and Z.S. often played at Satchell's house.

The jury then heard from D.S. and Z.S. D.S. described many times that Satchell had sexually abused him between the ages of 10 and 15. Z.S. described several incidents of abuse when he was between the ages of 7 and 9.

D.S. recalled the first time was when Satchell moved his hands back and forth on D.S.'s penis. He said that happened again a week later; the second time, Satchell also tried unsuccessfully to put his penis into D.S.'s anus. D.S. said Satchell did put his penis in D.S.'s anus another time after first touching D.S.'s penis and performing oral sex. D.S. said Satchell performed oral sex again another time.

D.S. also recalled one event that involved Satchell's girlfriend, Jessica. D.S. said on that occasion, Jessica had performed oral sex on D.S. and that Satchell had touched D.S.'s penis afterward. D.S. also recalled two sleepovers when Satchell touched D.S.'s penis and performed oral sex. He said that Satchell often made D.S. "jack him off." And D.S. said he twice saw Satchell sexually abuse Z.S.

Z.S. described several incidents: Satchell touched Z.S.'s anus when he was 7; Satchell often French-kissed Z.S. when he was 8 or 9; that Satchell touched Z.S.'s penis one time and performed oral sex on Z.S. another time when Z.S. was 9; Satchell once made Z.S. put his hands up and down on Satchell's penis; Satchell once put his penis inside and outside Z.S.'s anus. Z.S. also described some incidents when Jessica was

5

present: Satchell touched Z.S.'s penis while all three were in bed together; Jessica and Satchell both touched Z.S.'s penis three times; Jessica performed oral sex on Z.S.; and Satchell made Z.S. touch Jessica's vagina.

Kylie, who had dated Satchell from 2008 to 2011, said that Satchell had fantasized about touching D.S. inappropriately in their bedroom. She also said that she had seen D.S. and Satchell leaving the bedroom while both were buttoning up their pants, although Satchell had told her later that nothing had happened.

The last witness on the current charges was Detective Christopher Zandler, who had interviewed D.S., Z.S., Angela, and Angela's husband. He said both D.S. and Z.S. recounted sexual abuse, and the jury saw and heard Zandler's videotaped interviews of the boys.

As we have already noted, even though these six witnesses focused on the current charges, mentions of the 2010 allegations were interspersed. Officer Doshier talked about her interview with Angela, who is both the mother of D.S. and Z.S. and the aunt of two of the children alleged to have been abused in 2010. Doshier noted that Angela told her that Satchell abused D.S. and Z.S. around the same time he abused A.L. and T.L. Angela, Kylie, D.S., and Z.S. all testified that A.L., T.L., and A.C. would often play in the pool at Angela's house while Satchell was there. D.S. said that Satchell had touched him after he "had just got out" of prison from "the case with [A.L.], [T.L.], and [A.C.]" And Kylie said that Satchell had had dreams about A.L., T.L., A.C., and another child.

The trial next turned fully to the 2010 allegations. The State's evidence began with A.L., then age 12, T.L., then age 14, and A.C., then age 13. All three said that Satchell had touched their private parts that summer while all the kids were in the swimming pool at Angela's house. A.C. also said that Satchell had touched A.C.'s penis twice that summer at A.C.'s house.

6

Detective Lori Werlein testified about interviews she had done with A.L., T.L., and A.C. In her first interview with Satchell, he denied those allegations. She brought him back for a second interview at which Satchell agreed to have a polygraph examination, which was administered by Ricky Atteberry.

Atteberry, a special investigator with the Kansas Bureau of Investigation, was the State's final witness. He gave Satchell the polygraph exam. During that exam, Satchell denied the children's allegations. After the exam, as Atteberry continued to interview Satchell; Atteberry said that he believed Satchell had been deceptive about his contacts with A.L. Satchell then told Atteberry that Satchell had been "in the pool with [A.L.], behind her, and [Satchell had] rubbed on her vagina for approximately a minute."

Atteberry then asked Satchell to write that down on a piece of paper. Satchell wrote: "I was daydreaming about having sex with my girlfriend [and] my hand was in between [A.L.'s] legs. I realized what I was doing [and] immediately stopped. [F]or about 30-45 sec[onds] but less than 1 min[ute]." Satchell signed the written statement that he had inappropriately touched A.L. while "daydreaming." After that admission, Satchell was arrested for the 2010 events. Werlein told the jury about the plea agreement Satchell had entered into in 2011 to resolve those allegations.

Satchell and his mother, Brenda, testified for the defense. Satchell denied the allegations made by A.L., T.L., and A.C.; he said he had never been alone with any of them. He also denied the allegations made by D.S. and Z.S.

He said he admitted to touching A.L. because Atteberry had given him "a scenario, and [Satchell] just wanted all the questioning to stop and to just be able to leave." Satchell said he accepted a plea deal in 2011 so that he could "get out of jail and

7

go back home to [his] family." He said he had been arrested after making the statement about A.L. and had remained in custody for 429 days. In response to questions from his attorney, Satchell noted that the charges he was found guilty of under the plea agreement—aggravated battery and child endangerment—were not sexual offenses.

Satchell denied having told Kylie about any sexual fantasies involving children. He also denied any sexual conduct involving himself, Jessica, and a child, though he said that D.S. and Z.S., who were sleeping on the floor, might have seen him and Jessica have sex on their bed once.

Brenda said that Satchell lived in her house in the bedroom furthest from hers. She said that D.S. and Z.S. often came over to play video games, watch Netflix, or use the Internet. She said they also played with Satchell's son and sometimes had sleepovers at her house. Brenda said that she never saw D.S. and Z.S. behave strangely or act agitated around Satchell. She also said that D.S. and Z.S. had a general reputation for being untruthful, noting that they had taken food from her refrigerator and denied it.

One other aspect of the trial is important to note for this appeal. Satchell's attorney at first requested what's called a "limiting instruction," which is an instruction that tells the jury that evidence admitted for a specific and limited purpose can't be considered when deciding something else. In earlier times, limiting instructions were often used in cases like this one. That's because, before 2009, Kansas law didn't allow consideration of past instances of sexual misconduct to be used to show a propensity for future misconduct. It could be used only for a more limited purpose, like showing an absence of mistake (if a person said that their hand had innocently strayed inside a child's clothing, for example, but that had happened before with another child) or planning (if a person had "groomed" more than one child to be a victim of sexual misconduct). In cases like those, a limiting instruction would have been given. It would have told the jury that it

8

could consider the evidence about other misconduct of the defendant involving different children only on the issue of absence of mistake or planning, but that it could not decide the case based on the idea that the defendant had a propensity toward sexual misconduct.

In 2009, though, the Kansas Legislature amended Kansas evidence law so that past events of sexual misconduct *could* be presented and considered as evidence of propensity. See *State v. Prine*, 297 Kan. 460, Syl. ¶¶ 3-4, 303 P.3d 662 (2013). Once that was the case, a limiting instruction forbidding the consideration of past sexual misconduct for propensity purposes was no longer appropriate. So although Satchell's attorney initially requested a limiting instruction, the attorney withdrew that request at trial.

The jury convicted Satchell on all counts, and the district court sentenced Satchell to eight consecutive "hard" 25-year prison terms for the eight off-grid offenses (aggravated criminal sodomy, aggravated indecent liberties, and rape), followed by 100 months in prison for criminal sodomy. (The criminal-sodomy sentence came from our state's sentencing guideline grid.) If Satchell is one day released from prison, the court ordered that he receive lifetime parole for the off-grid offenses and lifetime postrelease supervision for the on-grid offense.

Satchell appealed to the Court of Appeals on several grounds, but only two are relevant here. First, he argued that the district court should have kept evidence of the 2010 allegations out of the trial because they unduly prejudiced him. Second, he argued that he should not have been given lifetime postrelease supervision. The Court of Appeals rejected both claims, and we granted review of them.

ANALYSIS

I. *The District Court Did Not Abuse Its Discretion in Admitting Evidence of the 2010 Allegations.*

Satchell's main argument is that his trial was fundamentally unfair because the district court allowed the jury when determining whether he had sexually abused two children to hear evidence that he had sexually abused three other children. Evidence like that is very powerful, and Satchell contends it unfairly tilted the scales of justice against him.

When a trial court confronts a dispute about whether evidence like this may be presented, it faces evidentiary rules that are in tension. On one hand, the Legislature has determined that when a defendant is accused of a sex offense, "evidence of the defendant's commission of another act or offense of sexual misconduct is admissible, and [it] may be considered for its bearing on any matter to which it is relevant and probative." K.S.A. 2019 Supp. 60-455(d). And one matter to which that evidence is relevant is the defendant's propensity to commit similar offenses. *State v. Bowen*, 299 Kan. 339, Syl. ¶ 7, 323 P.3d 853 (2014).

On the other hand, we want trials to be fair, and some evidence can be unduly prejudicial. Another evidentiary rule, K.S.A. 60-445, gives the trial court the discretion to exclude evidence if "its probative value is substantially outweighed by the risk that its admission will unfairly and harmfully surprise a party." While that rule talks only of the risk of unfair surprise, it has long been applied much more broadly—excluding evidence if its probative value is substantially outweighed by the risk of unfair prejudice. See *State v. Boysaw*, 309 Kan. 526, 539-40, 439 P.3d 909 (2019); *Prine*, 297 Kan. at 477-78; *State v. Leitner*, 272 Kan. 398, Syl. ¶ 5, 34 P.3d 42 (2001).

Whether to admit evidence under K.S.A. 2019 Supp. 60-455(d) and whether to exclude evidence under K.S.A. 60-445 are discretionary decisions the trial court makes in the context of other evidence and the arguments made at trial. We review that ruling only for abuse of discretion. That means that we reverse the trial court only if (1) no reasonable person would adopt the trial court's view; (2) the decision was based on a legal error; or (3) substantial evidence does not support a factual finding on which the court's exercise of discretion was based. *Bowen*, 299 Kan. 339, Syl. ¶¶ 6-7.

The first of the decisions—whether to admit evidence under K.S.A. 2019 Supp. 60-455(d)—is often uncomplicated. Given the broad wording of subsection (d), evidence that meets its criteria usually will be admissible. *Boysaw*, 309 Kan. at 539. Satchell doesn't challenge that here. He concedes that if the 2010 allegations were true (something he denies), that would show a propensity to commit sexual acts against children. He also concedes, as he must, that this would be relevant evidence.

So the focus of the appeal is the second decision—whether the probative value of this evidence was substantially outweighed by the risk of unfair prejudice.

This balancing test has two components: probative value, the strength of the evidence in proving something, and undue prejudice, the risk that the evidence will lead to unfairness in the trial. We have set out some nonexclusive factors a district court should consider when balancing probative value against the risk of undue prejudice. 309 Kan. 526, Syl. ¶¶ 8-9.

For probative value, the court should consider (1) how clearly the prior acts were proved; (2) how probative the evidence is of the material fact sought to be proved; (3) how seriously disputed the material fact is; and (4) whether the government can obtain any less-prejudicial evidence. 309 Kan. 526, Syl. ¶ 8. For undue prejudice, the

court should consider (1) the likelihood that the evidence will contribute to an improperly based jury verdict; (2) whether the evidence will distract the jury from the central trial issues; and (3) how time consuming it will be to prove the other conduct. 309 Kan. 526, Syl. ¶ 9. With these factors in mind, we turn to how the district court weighed them.

*Probative-value Factors*

The district court found that all four of the probative-value factors favored the admission of this evidence. We agree:

- *How clearly the prior acts had been proved*. While Satchell disputes the 2010 allegations, there was strong evidence to support them. The district court found that Satchell's no-contest plea showed that he had "accept[ed] responsibility for [the] crimes." While Satchell emphasizes that he didn't specifically plead to a sexual offense, he had told an investigator that he had rubbed A.L.'s vagina for about a minute and he had confirmed in a written statement that he had put his hand in between A.L.'s legs. Those admissions supported the sex-offense allegations. Satchell argues that he wasn't convicted of any sexual offenses, but other-acts evidence under K.S.A. 2019 Supp. 60-455(d) isn't limited solely to convicted acts of sexual misconduct. *Prine*, 297 Kan. 460, Syl. ¶ 5. The district court also found that the State had provided independent proof of the 2010 allegations through its witnesses; the three children testified, and their testimony tracked their 2010 statements.

- *How probative the evidence is of the material fact sought to be proved*. The ultimate material fact the State sought to prove, of course, was that Satchell had molested D.S. and Z.S. The State used the 2010 evidence to show Satchell's propensity—and that propensity did make it much more likely that D.S. and Z.S.

12

were telling the truth. The district court correctly found that the probative value of the evidence was high.

- *How seriously disputed the material fact is*. The district court found that the material facts—crimes against D.S. and Z.S.—were fully disputed by Satchell. On appeal, Satchell argues that this factor should be considered neutral since the State need not show propensity to prove the crimes against D.S. and Z.S. But that's not what's measured by this factor. Satchell fully disputed the crimes charged by the State, so this factor supported the admission of relevant propensity evidence.

- *Whether less-prejudicial evidence is available.* Satchell suggests that the State could have called a single witness, Detective Werlein, rather than call the three children, Atteberry, and Werlein. It's true that Werlein could have told the jury what the children had said happened, what Satchell said to Atteberry (which she mostly witnessed from the next room), and what happened under the 2011 plea agreement. But it's difficult to see how that would give the jury any chance to assess that evidence. Satchell denied the conduct at trial, and he had pleaded in 2011 to a nonsexual offense. The State limited its questioning of these witnesses to the key points; given Satchell's denials, less-prejudicial evidence was unavailable here.

*Undue-prejudice Factors*

Probative value is only half of the balancing equation; we must also consider the potential for undue prejudice. We have set out three nonexclusive factors to guide the district court's consideration: (1) the likelihood that the evidence will contribute to an improperly based jury verdict; (2) whether the evidence will distract the jury from the central trial issues; and (3) how time consuming the evidence will be. *Boysaw*, 309 Kan. 526, Syl. ¶ 9.

13

Our understanding of the district court's consideration of these factors is minimal because that court didn't explicitly reference them. The court did comment on the four probative-value factors, and it took those from a federal opinion, *United States v. Enjady*, 134 F.3d 1427, 1433 (10th Cir. 1998), that listed both the four probative-value factors and the three undue-prejudice factors we have set out here. Since it cited to a case listing all seven factors, we assume that the district court considered them when it balanced the probative and prejudicial factors in Satchell's case. It would be preferable if that were done more explicitly, but we have an adequate record to review them. See *State v. Claerhout*, 310 Kan. 924, 930-31, 453 P.3d 855 (2019).

*Likelihood of improperly based verdict*. There is some risk here of an improperly based verdict. The jury heard not only evidence that Satchell had sexually molested three more children but also evidence that he may have been punished less severely than might have been appropriate under a plea deal. Given the situation in Satchell's case, it would have been next-to-impossible to avoid some explanation of the plea deal: Satchell wanted to explain why he had been convicted of some conduct he denied at trial, and the State wanted to explain why Satchell wasn't convicted of a sexual offense. But there was a real risk that the jury might conclude that Satchell should have received greater punishment for molesting A.L., T.L., and A.C.

*The possibility of distraction from the central issues*. Once again, there is some risk that the jury will become distracted from the issues before it—whether Satchell committed specific crimes against D.S. and Z.S.—when the State's presentation covers molestation of five children instead of two.

*How time consuming the additional evidence will be*. The five witnesses the State presented on the 2010 allegations took only 45 pages in the trial transcript: A.L. (5 pages), T.L. (7 pages), A.C. (6 pages), Werlein (12 pages), and Atteberry (15 pages).

14

That's not a great deal of time to present allegations involving the three other children. As lawyers know, but the public may not, transcript pages can pile up quickly—they are double-spaced, have wide margins, and one-word answers like "Yes" and "No" each go on a separate line. So the additional evidence wasn't especially time-consuming. By comparison, the State's first six witnesses, whose testimony mainly covered the charged crimes, took 148 pages.

*Balancing the Factors*

With that analysis of the factors in mind, we turn to balancing them. All relevant evidence is admissible unless some other rule allows its exclusion. See K.S.A. 60-407(f). Here, K.S.A. 60-445 allows the district court to exclude the evidence if its probative value is "substantially outweighed" by the risk of undue prejudice.

We recognize that we have shortened that statement in some cases by leaving out the word "substantially." E.g., *State v. Perez*, 306 Kan. 655, 670, 396 P.3d 78 (2017); *State v. Richard*, 300 Kan. 715, Syl. ¶ 1, 333 P.3d 179 (2014). The omission of the word has received some criticism since it's an important component of the test in K.S.A. 60-445. See James M. Concannon, Evidence, Kansas Annual Survey of Law, 141-42 (KBA 2020). In other cases, though, we've noted that the test requires that probative value be "substantially outweighed" by the prejudice risk. See *State v. Hachmeister*, 311 Kan. ___, No. 114,796, 2020 WL 3022993, at *5-6 (2020); *State v. Morris*, 311 Kan. ___, No. 119,911, 2020 WL 2504589, at *6 (2020); *State v. Thurber*, 308 Kan. 140, 202, 420 P.3d 389 (2018); *State v. Lloyd*, 299 Kan. 620, 637, 325 P.3d 1122 (2014). As Dean Concannon has noted, K.S.A. 60-445, like its federal counterpart, Rule 403 of the Federal Rules of Evidence, requires that probative value be substantially outweighed by the risk of undue prejudice. See Concannon, Evidence, Kansas Annual Survey of Law, 151-52 (KBA 2019). That's the test we have been applying, despite the occasional shorthand references.

15

When we apply that test here, we do not find that the risks of undue prejudice substantially outweigh the probative value. As the district court correctly held, the probative value of this evidence was quite high. The charges stemmed from statements by children, and there was no way to verify them with physical evidence. So if Satchell had sexually abused other children—in similar situations and locations—during the same general period, that would be strong propensity evidence. While there was some risk that the jury might decide the case on some improper basis (like wanting to punish Satchell more severely than had already been done for the prior conduct), we cannot say that the risks of undue prejudice outweighed the probative value at all. And we certainly cannot say those risks substantially outweighed the probative value.

Earlier in the opinion, we noted that Satchell's attorney had initially requested a limiting instruction regarding evidence of the 2010 allegations. The attorney withdrew that request after realizing that the instruction he requested, which would have told the jury that the evidence couldn't be considered as evidence of Satchell's propensity to commit similar crimes, wasn't appropriate under the amended version of K.S.A. 2019 Supp. 60-455(d). Based on our review of the transcript, it appears that defense counsel and perhaps the district court believed that no limiting instructions were even potentially available in a case like this given the change in K.S.A. 2019 Supp. 60-455(d) to allow prior-acts evidence to show propensity.

Even so, K.S.A. 60-406 provides that "[w]hen relevant evidence is admissible . . . for one purpose and is inadmissible . . . for another purpose, the judge upon request shall restrict the evidence to its proper scope and instruct the jury accordingly." As we noted in our analysis of the undue-prejudice factors, although prior-acts evidence is now admissible to show propensity in sex-crime cases, it's still not admissible for all purposes. For example, it would be improper for the jury to consider whether Satchell was punished enough for his earlier offenses. At present, Kansas does not have a pattern jury

instruction that would apply to a situation like that, but several federal courts have one. E.g., Model Crim. Jury Instr. 8th Cir. 2.08A (2020); Model Crim. Jury Instr. 9th Cir. 2.11 (2020).

We mention the possibility of a limiting instruction because that can be significant when we find that the district court shouldn't have admitted evidence and then must determine whether the error was harmless. We have often found that a limiting instruction is an important factor in harmless-error analysis. E.g., *State v. Logsdon*, 304 Kan. 3, 39, 371 P.3d 836 (2016); *State v. Kettler*, 299 Kan. 448, 478, 325 P.3d 1075 (2014). In Satchell's case, though, no limiting instruction was requested and we found no error.

II. *The District Court Erred by Ordering Lifetime Postrelease Supervision.*

Satchell separately challenges one part of his sentence. Some of Satchell's crimes had a presumptive sentence on our state's sentencing guideline grid. Others had sentences set out in statutes off the grid. The district court sentenced him to two supervision terms, lifetime parole for his off-grid offenses and lifetime postrelease supervision for his on-grid crime. Satchell argues that postrelease supervision should not have been ordered. The State contends that both lifetime parole and lifetime postrelease supervision were required here.

In their briefs, the parties relied on different sections in K.S.A. 2016 Supp. 22-3717. Subsection (d)(1)(G) provides that someone sentenced to prison for committing a sexually violent crime must receive lifetime postrelease supervision after completing the prison term. But that provision doesn't apply if subsection (u) applies; it says that a person sentenced to prison under K.S.A. 2016 Supp. 21-6627 must receive lifetime parole after completing their prison term. Some of Satchell's crimes were covered by the mandatory minimum sentences provided for under K.S.A. 2016 Supp. 21-6627, one of

17

many off-grid sentencing provisions. The district court in Satchell's case imposed postrelease supervision for the on-grid offense and lifetime parole for the off-grid offenses.

But this potential battle of provisions in K.S.A. 2016 Supp. 21-6627 is not the end of the story. Another statute applies to cases in which the defendant is convicted of multiple offenses. We cite to the version of that statute, K.S.A. 2016 Supp. 21-6819, that was in effect at the time of Satchell's offenses (and thus controls his sentences). Under it, since the district court gave Satchell consecutive sentences for on-grid and off-grid convictions, only postrelease supervision may be ordered:

> "(b) . . . In cases where consecutive sentences may be imposed by the sentencing judge, the following shall apply:
>
> . . . .
>
> (2) . . . If sentences for off-grid and on-grid convictions are ordered to run consecutively, the offender shall not begin to serve the on-grid sentence until paroled from the off-grid sentence, and the postrelease supervision term will be based on the off-grid crime.
>
> . . . .
>
> (4) . . . The postrelease supervision term will reflect only the longest such term assigned to any of the crimes for which consecutive sentences are imposed. Supervision periods shall not be aggregated." K.S.A. 2016 Supp. 21-6627.

We applied that language in *State v. Ross*, 295 Kan. 1126, 1133, 289 P.3d 76 (2012). There, the district court sentenced Ross on two offenses—felony murder (an off-grid offense) and kidnapping (a grid offense). The district court imposed consecutive sentences, a hard-20 sentence for felony murder followed by 36 months for the

18

kidnapping conviction. The district court imposed postrelease supervision on the kidnapping offense, but Ross argued that was an illegal sentence.

We agreed. Because felony murder is an off-grid felony, Ross would be eligible for parole after serving 20 years in prison. He would not begin to serve the 36-month prison term for the grid offense until he was paroled from the off-grid offense. Under the statute, the supervision term that would follow his release from prison after serving that grid sentence had to be based on the off-grid offense, murder. Thus the supervision term for felony murder, lifetime parole, was the only supervision term the district court could order. We held that "[b]ecause Ross received an off-grid life sentence for felony murder, his prison term should be followed by lifetime parole," so we vacated the postrelease supervision part of his sentence. 295 Kan. at 1134.

Like Ross, Satchell's consecutive sentences included both off- and on-grid sentences. Under K.S.A. 2016 Supp. 21-6819(b)(2), the district court had to base the supervision term that would follow Satchell's release from prison on his off-grid offenses. The supervision term for those offenses is lifetime parole. See K.S.A. 2016 Supp. 22-3717(u). So that's the only supervision term that would apply to Satchell once he has served all his prison sentences. The district court's additional imposition of lifetime postrelease supervision must be vacated.

We therefore vacate the portion of the sentence imposing lifetime postrelease supervision. We otherwise affirm the district court's judgment.

HENRY GREEN, JR., J., assigned.[1]

STEVE LEBEN, J., assigned.[2]

---

[1] **REPORTER'S NOTE:** Judge Green, of the Kansas Court of Appeals, was appointed to hear case No. 116,151 under the authority vested in the Supreme Court by K.S.A. 2019 Supp. 20-3002(c) to fill the vacancy on the court by the retirement of Justice Lee A. Johnson.

[2] **REPORTER'S NOTE:** Judge Leben, of the Kansas Court of Appeals, was appointed to hear case No. 116,151 under the authority vested in the Supreme Court by K.S.A. 2019 Supp. 20-3002(c) to fill the vacancy on the court by the retirement of Chief Justice Lawton R. Nuss.