IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 117,461

STATE OF KANSAS,
*Appellee*,

v.

SAMUEL DARRAH,
*Appellant*.


SYLLABUS BY THE COURT


1.

Generally, it is within the sentencing court's sound discretion to determine whether a sentence should run consecutive to, or concurrent with, another sentence.


2.

Judicial discretion is abused if judicial action: (1) is arbitrary, fanciful, or unreasonable, i.e., if no reasonable person would have taken the view adopted by the trial court; (2) is based on an error of law, i.e., if the discretion is guided by an erroneous legal conclusion; or (3) is based on an error of fact, i.e., if substantial competent evidence does not support a factual finding on which a prerequisite conclusion of law or the exercise of discretion is based.


3.

Under the facts of this case, a reasonable person could have concluded consecutive sentences were proportionate to the harm and culpability associated with the defendant's convictions under K.S.A. 2018 Supp. 21-6819(b).

1

Appeal from McPherson District Court; JOHN B. KLENDA, judge. Opinion filed June 21, 2019. Affirmed.

*Michelle A. Davis*, of Kansas Appellate Defender Office, was on the brief for appellant.

*Steven J. Obermeier*, assistant solicitor general, and *Derek Schmidt*, attorney general, were on the brief for appellee.

The opinion of the court was delivered by

NUSS, C.J.: In this multiconviction sentencing case, Samuel Darrah claims the district court abused its discretion in ordering his 100-month sentence for attempted aggravated kidnapping be consecutive to, instead of concurrent with, his hard 25 life sentence for felony murder. In support, Darrah argues that he did not personally kidnap or fatally stab the victim. He further claims the two other individuals involved in the crimes played greater roles than his. But given Darrah's leadership in the planning, coordinating, and carrying out of these serious crimes, we conclude the court did not abuse its discretion in imposing consecutive sentences under K.S.A. 2018 Supp. 21-6819(b). So we affirm.

FACTS AND PROCEDURAL HISTORY

The essential facts come from a preliminary hearing. Witnesses included Darrah's alleged coconspirators in James Croft's murder: Clinton Bascue and Darrah's girlfriend, Kamra Farrell. Darrah's close friend, Christa Martin, and Dan Kelly—Darrah's drug dealer and fellow band member—also testified.

Darrah, Farrell, and Bascue lived and did methamphetamines together in the summer of 2014. One day Kelly, their usual dealer, gave Darrah $3,200 to buy a supply of drugs. Darrah gave the money to Croft–also known as "Frog"—to exchange for drugs.

But Croft never provided them. So Darrah told Kelly he did not have the drugs because Frog had robbed him. Kelly became upset and told Darrah to fix it.

By that November, Darrah still had not paid the money back or obtained the drugs for Kelly. Nevertheless, Darrah went with Farrell and Bascue to Kelly's house in Wichita for more drugs. Darrah told Kelly he was going to make it right by killing Croft. But Kelly did not care anymore, telling Darrah to just drop it because killing Croft would not get his money back. Darrah continued to say he would take care of it, however, which Kelly took to mean that Darrah would kill Croft. After Farrell and Darrah left Kelly's house, she and Darrah continued to discuss finding Croft and killing him.

A few days later Darrah came to his friend Christa Martin's home in the early morning with Farrell and Bascue. They all went into her garage to do drugs and talk. There, Darrah told Martin he had been robbed of $3,200 by an individual known as "Frog." Farrell said she hoped they could find Frog and that he could lead her to John Stark whom Farrell believed had her computer containing pictures of her deceased child.

According to Martin, Darrah had a gun and he and Farrell discussed robbing Frog. The plan was for Farrell to drop Darrah and Bascue in a field. Farrell then would pick Frog up from his home and take him to the field where they would rob him. Farrell asked Martin if she would drive a vehicle or if they could borrow one, and Martin said no. Martin left the garage at that point because she did not want any involvement in the scheme. Kacee Probst, who lived with Martin, provided similar testimony.

Farrell's testimony about the crime planning in the garage was similar to Martin's. In addition, Farrell testified she had been in contact with Croft before they had stopped at Kelly's house and Croft had told her that he knew the location of her computer. She

3

wanted to meet with him as a step toward retrieving her computer from Stark and to meet him without Darrah and Bascue because he trusted her.

According to Farrell, Darrah was jealous of Croft, whose text messages indicated he wanted to have sex with her. So after the trio—Farrell, Darrah, and Bascue—left Martin's house, Darrah directed Farrell to drop him and Bascue off at Moccasin Road. Both men were armed—Darrah with a gun and Bascue with knives—and they waited by the roadside. According to Farrell, the plan was for her to bring Croft there and for Darrah and Bascue to rough him up—then force him to take them to Stark to retrieve Farrell's computer. Then, Farrell would punch Croft, and Darrah would shoot him to death.

Farrell dropped off Darrah and Bascue and then went to Croft's house. After spending some time together there, Croft left with Farrell to look for her computer. Without Croft's knowledge, throughout most of the encounter Darrah listened in on their conversation via a Bluetooth device on Farrell's ear.

Farrell drove Croft to the field where Darrah and Bascue were waiting. Croft became suspicious and yelled at her to stop. Farrell got out, Bascue came running up, and Darrah started shooting at the car. Bascue jumped in from the passenger side and fought with Croft as the car slid into the ditch.

Bascue then jumped out of the car and ran over to Darrah and Farrell saying he had stabbed Croft. Bascue handed Darrah the knife which Darrah started stabbing into the ground. Darrah also took apart his gun and threw the parts around in the field. Darrah instructed Farrell to call 911 and report the car stolen. After some debate, she made the call, and the three started walking away.

In the meantime, a passerby had already stopped at Farrell's car and called 911. By the time paramedics arrived, Croft was dead. Law enforcement officers soon caught up with Darrah, Farrell, and Bascue in the field nearby.

While the case was scheduled for a status conference, the parties reached a plea agreement. The State agreed to amend original charges to first-degree felony murder in violation of K.S.A. 2018 Supp. 21-5402(a)(2) and added two more counts: attempted aggravated kidnapping in violation of K.S.A. 2018 Supp. 21-5408(b), 21-5210(a), and 21-5301, a severity level 3 person felony; and aggravated robbery in violation of K.S.A. 2018 Supp. 21-5420(b)(2) and 21-5210(a), a severity level 3 person felony. Darrah agreed to plead no contest to the charges as amended. The parties had no agreement as to sentencing recommendations. The district court ultimately accepted Darrah's plea.

Before sentencing, Darrah filed a motion asking the court to exercise its discretion to impose concurrent instead of consecutive sentences. In the motion, Darrah argued that his culpability was not as severe as Bascue's and he was not as central to the plot as Farrell. So he maintained his sentence should not be greater than either of theirs and the only way to assure that was to run the counts concurrent and not consecutive.

At the sentencing hearing, the court reviewed the presentence investigation report which showed Darrah had a previous conviction, resulting in a criminal history score of D. The State requested the aggravated gridbox sentence for attempted aggravated kidnapping: 100 months. In support, the State cited K.S.A. 2018 Supp. 21-6815(c)(2)(H), which describes one aggravating factor as whenever the person being sentenced is the leader, recruiter, instigator, or manager of a conspiracy between two or more persons to commit a crime.

In response to the motion, the State recited facts from the preliminary hearing to show Darrah was the leader of the conspiracy, specifically including the following: (1) the motive for the crimes was to recoup money stolen from Darrah by Croft; (2) Darrah acquired the gun used in the crime; (3) Darrah's girlfriend, Farrell, had a motive to get her computer back from Stark, but not to kill Croft; (4) Bascue did not have any motive against either Stark or Croft; and (5) Darrah was the connection to both Kelly (to whom Darrah owed the money he wanted to reclaim from Croft) and Martin (at whose house the conspirators hatched the plot).

The State also read into the record the victim statement from Croft's wife, Darlene Lawrence, about the sorrow and hardship she and their daughter suffered as a result of his death. As a result, the State requested the court run the attempted aggravated kidnapping sentence consecutive to the felony first-degree murder sentence and the aggravated robbery concurrent to both.

At sentencing Darrah requested the court impose the mitigated gridbox sentences for the two on-grid crimes. And he repeated his request for concurrent sentences for all three convictions. Darrah emphasized that Bascue stabbed Croft to death, not he. He further argued Bascue had already pled to the crimes and received a controlling sentence of 25 years. He also pointed out Farrell too had already pled and, because of another ongoing case, received a total of 30 years for both.

Darrah admitted he had struggled with drug addiction for his entire life. But he argued he accepted responsibility by entering the no contest plea. He also contended his involvement was not as extreme as the State made it out to be. Defense counsel described Darrah as 47 years old, but with a family history of cancer. Darrah has three children he wanted to see outside his prison walls at some point in his life. He would most likely be unable to do so if the court ran the counts consecutive.

For Count 1—felony murder—the court imposed a life sentence with the possibility of parole after 25 years ("hard 25"). On Count 2—attempted aggravated kidnapping—the court imposed the aggravated, gridbox sentence of 100 months and ordered it to run consecutive to Count 1. For Count 3, aggravated robbery, the court imposed the gridbox sentence of 59 months and ordered Count 3 be concurrent with Counts 1 and 2.

Our jurisdiction is under K.S.A. 2018 Supp. 22-3601(b)(3) (life sentence imposed).

ANALYSIS

Issue: *The district court did not abuse its discretion by ordering Darrah to serve his sentences for felony murder and attempted aggravated kidnapping consecutively.*

Darrah claims the sentencing court abused its discretion in ordering his 100-month sentence for aggravated attempted kidnapping be consecutive to his hard 25 life sentence. The State responds the consecutive sentences are reasonable under the particular facts of this case.

*Standard of review*

A sentencing judge has discretion to impose concurrent or consecutive sentences in multiple conviction cases under K.S.A. 2018 Supp. 21-6819(b) (absent certain circumstances, the sentencing judge shall "have discretion to impose concurrent or consecutive sentences in multiple conviction cases"). This statute does not list specific factors for consideration. Rather, it states the judge "may consider the need to impose an

7

overall sentence that is proportionate to the harm and culpability" associated with the crimes. K.S.A. 2018 Supp. 21-6819(b); *State v. Wilson*, 301 Kan. 403, 405, 343 P.3d 102 (2015).

This court's abuse of discretion standard is well-established:

> "'Judicial discretion is abused if judicial action: (1) is arbitrary, fanciful, or unreasonable, i.e., if no reasonable person would have taken the view adopted by the trial court; (2) is based on an error of law, i.e., if the discretion is guided by an erroneous legal conclusion; or (3) is based on an error of fact, i.e., if substantial competent evidence does not support a factual finding on which a prerequisite conclusion of law or the exercise of discretion is based.'" *State v. Shank*, 304 Kan. 89, 92, 369 P.3d 322 (2016).

The party asserting an abuse of discretion bears the burden of establishing such abuse. *State v. Corbin*, 305 Kan. 619, 622, 386 P.3d 513 (2016).

*Discussion*

Given how Darrah has framed his issue on appeal, for us to conclude the district court abused its discretion by unreasonably ordering the sentences for the attempted aggravated kidnapping and felony murder convictions to run consecutive instead of concurrent, we would have to conclude that no reasonable person would have taken the court's view. *State v. Ward*, 292 Kan. 541, 550, 256 P.3d 801 (2011). In applying the abuse of discretion test, even though the court did not make any factual findings or state reasons for its decision to run the sentences consecutive, a number of facts show Darrah was central to the conspiracy and acted as a leader in the commission of these serious crimes.

While Darrah himself did not commit the fatal stabbing of Croft, he was certainly involved in the planning and nearly every other aspect of the kidnapping and killing. This included providing the motive (revenge) for the drug transaction gone awry; repeatedly stating his intent to find Croft and kill him, despite Kelly telling him to "drop it"; being angry at Croft for flirting with Darrah's girlfriend, Farrell; determining the remote location for the commission of the crime; ensuring he was armed there; covertly coordinating with Farrell over her Bluetooth as she followed his instructions to lure Croft to where Darrah and Bascue were waiting; and, immediately after the stabbing, directing disposal of the weapons and telling Farrell to call and report the crime car as stolen.

In spite of Darrah's claim that his involvement is not as extreme as the State made it out to be, a reasonable person could have concluded consecutive sentences were proportionate to the harm and culpability associated with Darrah's convictions under K.S.A. 2018 Supp. 21-6819(b).  See *State v. Shank*, 304 Kan. 89, 369 P.3d 322 (2016) (no abuse of discretion in ordering consecutive instead of concurrent sentences where defendant cited youth and took responsibility for the crime but the State argued the brutal, cruel, and premeditated nature of the crime merited the consecutive sentences); *State v. Wilson*, 301 Kan. 403, 343 P.3d 102 (2015) (no abuse of discretion in ordering life sentence for murder and additional 310 months for remaining crimes to run consecutive instead of concurrent where defendant's misfortunes could not overcome the degree of harm he caused). We hold the district court did not abuse its discretion.

Affirmed.