NOT DESIGNATED FOR PUBLICATION

No. 120,945

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

JESSE LEHANE,
*Appellant*.

MEMORANDUM OPINION

Appeal from Wyandotte District Court; BILL KLAPPER, judge. Opinion filed April 2, 2021. Affirmed .

*James M. Latta*, of Kansas Appellate Defender Office, for appellant.

*Daniel G. Obermeier*, assistant district attorney, *Mark D. Dupree Sr.*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before BRUNS, P.J., GREEN and ATCHESON, JJ.

PER CURIAM:  A jury sitting in Wyandotte County District Court convicted Jesse Lehane of two counts of aggravated indecent liberties with a child for unlawful physical contact with his daughter and younger son. On appeal, Lehane raises numerous claims of error in the district court. We find no reversible error and affirm the convictions and resulting sentences.

1

After Lehane and his wife divorced in 2013, he had visitation with their three children every other weekend. The children stayed with Lehane in an apartment he shared with his father. The children slept on air mattresses, but the younger children typically would take turns sleeping with Lehane in his bed. In early April 2017, an acquaintance of Lehane contacted the children's mother to report seeing naked photos of the girl on Lehane's smartphone.

Mother immediately went to her daughter's school and spoke to the child in an office with the school counselor. The child, who was then about nine years old, said that her father regularly took photos of her backside when she was getting dressed or bathing and that he would caress her buttocks. Mother then contacted the Kansas City, Kansas, police. As part of the law enforcement investigation, a trained forensic examiner conducted a videotaped interview with the daughter about what happened. She again said that Lehane regularly photographed her bare behind and regularly touched her buttocks through her clothing, typically while they were together on the bed watching television. She told the interviewer Lehane did not otherwise inappropriately touch her.

After the forensic interview, mother explained to the children that they would not be able to visit their father. During the discussion, the younger son, who was then about eight years old, said that Lehane had photographed and touched his "pee-pee," meaning his penis, during the weekend visits. Mother reported the child's statement to law enforcement officers. During an expanded investigation, the boy gave a forensic interview and repeated what he had described to his mother. He, too, said Lehane regularly touched him during the weekend visits.

Although the children said Lehane inappropriately touched them during many of their visits to the apartment, they were unable to identify dates or even approximate times the wrongful acts happened. They were only able to say the conduct was frequent.

As the investigation progressed, a detective interviewed Lehane. He admitted taking what he said he now recognized to be inappropriate photographs of his daughter's bare behind and posting them on a questionable social media website. But Lehane denied photographing his son or inappropriately touching either child. He told the detective he believed his ex-wife had coached them to accuse him of doing so. Investigators obtained a search warrant for any smartphones in Lehane's possession. They seized four phones; an examination of their content revealed no inappropriate photographs of the children.

In mid-April 2017, the State filed an information charging Lehane with one count of aggravated indecent liberties with a child for lewdly touching his daughter's buttocks and one count of aggravated indecent liberties with a child for lewdly touching his younger son's penis. Those are off-grid felony violations of K.S.A. 2016 Supp. 21-5506 carrying life sentences with parole eligibility only after serving 25 years in prison. The information alleged the crimes occurred between January 1, 2015, and April 20, 2017. Lehane was arrested shortly after the charges were filed.

Investigators cautioned the children's mother against talking to them about what their father allegedly had done. She did not, however, refrain. Mother told investigators the daughter reported to her that Lehane had digitally penetrated her rectum. That prompted another forensic interview in which the child denied Lehane sexually assaulted her in such a manner and explained she had misunderstood what her mother had been asking her. The younger son also later reported that Lehane used cigarette butts to penetrate his rectum. The State did not amend the charges against Lehane based on those allegations.

3

The jury heard the case in late October 2018. All three children and their mother testified. So did various law enforcement officers. The videotaped forensic interviews of the children were admitted as evidence. Although the core accusations against Lehane were consistent, each child's successive account differed in some details. Likewise, the accounts from the daughter were, in some respects, difficult to reconcile with the accounts from the younger son, especially about the frequency of the improper touching. At trial, the older son, who was then about 12 years old, testified Lehane never touched or photographed him in inappropriate ways. And he told the jurors he never saw Lehane treat his brother and sister inappropriately. Lehane's father described the cramped confines of the apartment and similarly testified he never saw Lehane act untowardly with any of the children. Lehane did not testify in his own defense, but the jury heard his out-of-court statement to the detective and its blanket denial of sexual contact with the children.

The jury convicted Lehane as charged. Six weeks later, the district court sentenced Lehane to serve two concurrent life sentences with parole eligibility after 25 years. Lehane has appealed.

LEGAL ANALYSIS

Lehane has raised four distinct points on appeal that we take up serially, and, as we have indicated, we find no reversible error. We also find no grounds for relief based on Lehane's argument for cumulative error or the district court's denial of his motion for a new trial. In our discussion of each point, we augment our general statement of the facts as necessary.

*Failure to Give Multiple Acts or Unanimity Instruction*

The State's evidence showed Lehane touched his daughter and his son inappropriately many times when they visited him on the weekends. His daughter described repeated instances in which Lehane caressed her buttocks, and his younger son described repeated instances in which Lehane touched his penis. Each contact constituted an independent and distinct criminal act. So the jury heard about multiple instances of unlawful conduct that would support the single charge in which each child had been identified as the victim. The circumstances create what is commonly referred to as a "multiple acts" issue or problem. Lehane has a right to a unanimous verdict on each charge of aggravated indecent liberties with a child, requiring the jurors to agree on the specific wrongful act supporting that charge.

Historically, the appellate courts have treated this as a statutory right under K.S.A. 22-3421 because neither the Kansas Constitution nor the United States Constitution required a unanimous jury verdict to convict in noncapital cases tried in state court. See *State v. Brown*, 298 Kan. 1040, 1055, 318 P.3d 1005 (2014); *State v. Schreiner*, 46 Kan. App. 2d 778, 791, 264 P.3d 1033 (2011). With the United States Supreme Court's decision in *Ramos v. Louisiana*, 590 U.S. __, 140 S. Ct. 1390, 1396-97, 206 L. Ed. 2d 583 (2020), that analysis is no longer applicable. The Court held the right to jury trial guaranteed in the Sixth Amendment to the United States Constitution should be fully incorporated and applied to the states through the Due Process Clause of the Fourteenth Amendment. The *Ramos* decision extended the Sixth Amendment requirement for unanimous verdicts to defendants charged with serious crimes, including felonies, under state law. Lehane, therefore, enjoys such a constitutional right in addition to the statutory right in K.S.A. 22-3421.

The Kansas appellate courts have held that in a multiple acts case, a criminal defendant's right to a unanimous verdict requires the jurors be instructed that to convict,

5

they must agree that one particular wrongful act has been proved beyond a reasonable doubt. See *State v. Cottrell*, 310 Kan. 150, 154-55, 445 P.3d 1132 (2019) (recognizing rule but finding no multiple acts); *State v. Colston*, 290 Kan. 952, 961, 235 P.3d 1234 (2010) (use of jury instruction); PIK Crim. 4th 68.100 (2018 Supp.) (instruction on multiple acts and need for unanimity as to particular act). District courts typically give either a freestanding unanimity instruction or incorporate unanimity language drawn from PIK Crim. 4th 68.100 into another pertinent instruction. When a defendant has been charged with more than one count, the jury must ascribe a single distinct act to each count. The Kansas Supreme Court has held that a unanimity instruction may be omitted if the prosecutor in closing argument to the jurors specifically identifies or elects one criminal act shown in the evidence and informs the jurors they should consider that act in finding the defendant guilty or not guilty of the charge. *Colston*, 290 Kan. at 968-69.

On appeal, Lehane complains the district court's failure to give a unanimity instruction deprived him of a fair trial. We examine claims of instructional error, such as this, through a set of sequential legal considerations: (1) reviewability considering preservation of the issue at trial; (2) legal appropriateness of the instruction; (3) factual support in the evidence for the instruction; and (4) harmlessness of any actual error. *State v. Broxton*, 311 Kan. 357, 360, 461 P.3d 54 (2020); *State v. Plummer*, 295 Kan. 156, Syl. ¶ 1, 283 P.3d 202 (2012). A defendant's failure to raise or preserve a challenge to the jury instructions in the district court does not prevent appellate review but triggers a more demanding burden of showing "clear error" in the final analytical step. K.S.A. 2016 Supp. 22-3414(3); *State v. Mattox*, 305 Kan. 1015, 1025-26, 390 P.3d 514 (2017).

The State suggests we need not evaluate the omission of a unanimity instruction because the prosecutor effectively made an appropriate election in both opening statement and closing argument. We disagree. Rather than identifying the specific criminal act the jurors should consider as corresponding to each charge of aggravated indecent liberties with a child, the prosecutor essentially told the jurors in opening

statement the State would prove each and every allegation made against Lehane. And in closing argument, the prosecutor submitted the evidence had, indeed, proved all of the children's allegations on which the criminal charges rested.

The prosecutor's statements to the jurors really seems to be the antithesis of an election of a particular criminal act designed to insure a constitutionally sufficient unanimous verdict of guilty. On appeal, the State cites no authority for its proposition that an election of all is legally equivalent to electing one. The law is otherwise. See *Colston*, 290 Kan. at 969 (discussing contours of adequate election as requiring identification of particular act and direction that jurors must agree on that act or must disregard evidence of other acts). We, therefore, turn to our review of the district court's failure to give a unanimity instruction.

At the outset, the State contends Lehane not only failed to preserve the point in the district court but prompted the omission of a unanimity instruction, thereby rendering any error invited and unreviewable on appeal. Again, we disagree. Lehane neither requested a unanimity instruction nor objected to the district court's failure to give one to the jurors. That sort of inaction does not amount to invited error. See *Cottrell*, 310 Kan. at 162. To invite an instructional error, a party must "actively pursue" the course the district court ultimately takes in either giving or declining to give a particular jury instruction. 310 Kan. at 162.

The State attempts to bolster its otherwise faltering argument for invited error by pointing to comments Lehane's lawyer made supporting his pretrial request for a bill of particulars. The district court's refusal to order a bill of particulars is a separate issue we later address. But the lawyer's pitch for a bill of particulars did not entail active opposition to the use of a unanimity instruction. In seeking a bill of particulars, the lawyer wanted the long timeframe identified in the information shortened. The lawyer told the district court that without a more confined interval, a unanimity instruction would

7

be ineffective. Whatever the merits of the argument in the context of a bill of particulars, it doesn't migrate to the jury instruction conference or create some implicit objection on Lehane's part to the district court giving a unanimity instruction. Moreover, believing an instruction may be of little practical effect is not the same as opposing its use. We find no invited-error bar to our review of the instructional issue.

This is a multiple acts case; we do not understand the parties to be suggesting otherwise. A unanimity instruction, therefore, would be both factually and legally appropriate. The district court's failure to give the instruction coupled with the prosecutor's failure to elect specific acts for the jury's consideration amounts to error.

But because Lehane voiced no objection in the district court, we review the omission of a unanimity instruction for clear error. Under that standard, we must be firmly convinced the jury would have reached a different verdict if the error had not occurred. See *State v. Kleypas*, 305 Kan. 224, 302, 382 P.3d 373 (2016); *State v. Williams*, 295 Kan. 506, 516-17, 286 P.3d 195 (2012). And the standard applies to instructional errors implicating constitutional rights. *Kleypas*, 305 Kan. at 302; *State v. Purdy*, No. 119,872, 2020 WL 1897370, at *18 (Kan. App. 2020) (unpublished opinion). Lehane bears the burden of persuasion.

Considering the trial evidence filtered through the heightened standard for clear error, we cannot say the verdicts would have been different had the district court included a unanimity instruction among those it provided the jurors. Here, two of Lehane's children said he repeatedly touched them in sexually provocative and unlawful ways. Lehane directly denied any such conduct. The competing versions are fundamentally inconsistent and, therefore, presented the jurors with a clear credibility contest pitting the children against Lehane. Each side offered some circumstantial evidence bearing on credibility. For example, the inconsistencies in the accounts from the children arguably detract from their veracity. But Lehane's admission he took photographs of his daughter

while she was naked confirms a substantial part of her testimony describing her father's actions toward her. The jurors, of course, had the opportunity to observe the children and the other witnesses as they testified and particularly how they responded to cross-examination. The law treats a person's appearance on the witness stand as a powerful tool for fact-finders in assessing credibility. See *State v. Franco*, 49 Kan. App. 2d 924, 936, 319 P.3d 551 (2014); *State v. Bateast*, No. 120,120, 2020 WL 1969437, at *4 (Kan. App. 2020) (unpublished opinion). Although the jurors did not have the same chance with respect to Lehane, they heard his own version of the events through the statement he made to the detective during the investigation.

We may fairly conclude the jurors found Lehane's blanket declaration he never inappropriately touched either child to be wholly unworthy of belief. If the jurors had entertained even some considered possibility the denial might be true—thereby creating a reasonable doubt—they would have returned not guilty verdicts. But they did not, so they must have found the children's accounts, along with the other evidence, to be sufficiently convincing to erase any reasonable doubt of Lehane's culpability. In that situation, we cannot say the inclusion of a unanimity instruction would have had any discernable effect on the outcome. See *Colston*, 290 Kan. at 970; *State v. Kemp*, No. 115,812, 2018 WL 671182, at *18 (Kan. App. 2018) (unpublished opinion).

*Denial of Bill of Particulars*

On appeal, Lehane contends the district court impermissibly denied his motion for a bill of particulars. Under K.S.A. 22-3201(f), a defendant may request a bill of particulars if the charging instrument, here the information, "fails to specify the particulars of the crime sufficiently to enable [him or her] to prepare a defense." If the district court orders a bill of particulars, the State is then bound by the representations it contains. The decision to order a bill of particulars rests in the district court's sound judicial discretion. *State v. Rojas-Marceleno*, 295 Kan. 525, 534, 285 P.3d 361 (2012). A

9

district court exceeds that discretion if it rules in a way no reasonable judicial officer would under the circumstances, if it ignores controlling facts or relies on unproven factual representations, or if it acts outside the legal framework appropriate to the issue. *State v. Darrah*, 309 Kan. 1222, 1227, 442 P.3d 1049 (2019); *State v. Ward*, 292 Kan. 541, Syl. ¶ 3, 256 P.3d 801 (2011).

Lehane wanted the district court to order the State to more precisely define the time period in which the charged sexual abuse of the children took place. As we have outlined, the children described multiple acts of inappropriate touching over an extended period. Given Lehane's general denial of any wrongful conduct, we do not readily discern how a narrower window would advance his defense. This is not a case involving a single wrongful act that if fixed in time might support a defense, like an alibi, based on a demonstrable lack of opportunity to commit the crime at the identified time.

The appellate courts have typically afforded the State considerable latitude in charging the time periods during which child victims have been sexually abused, especially when the abuse has been recurrent. *Rojas-Marceleno*, 295 Kan. at 536-37. Moreover, a precise time is not an element of the vast majority of statutory crimes. The purpose of including a time in the charging instrument is to show the alleged criminal conduct occurred within the governing statute of limitations. K.S.A. 22-3201(b); *Rojas-Marceleno*, 295 Kan. at 533-34. Here, none of the alleged acts occurred on the cusp of the limitations period. See K.S.A. 2016 Supp. 21-5107(c)(2). Those considerations place the district court's denial of Lehane's motion for a bill of particulars comfortably within the broad realm of judicial discretion.

In addition, however, Lehane filed his motion four days before the jury trial was scheduled to start. By any measure, that's late in the game, especially when the purpose of a bill of particulars is to assist a defendant in assessing potential defenses. We fail to see how a narrowing of the time period in the information would advance that objective

several days before trial. The timing of the motion at least suggests a collateral purpose in delaying the trial. The district court probably would not have abused its discretion in denying the motion based on the late filing alone. We find no abuse of discretion on this issue.

*Admission of Evidence under K.S.A. 2016 Supp. 60-455*

Lehane contends the district court impermissibly admitted testimony and his own out-of-court statements regarding his taking nude photographs of his daughter and younger son. To recap, the children said Lehane photographed them unclothed. Investigators never found those photographs. But Lehane told the detective he had photographed his daughter from behind while she was dressing or bathing and had posted the photographs on a website.

In the district court, Lehane filed a general motion in limine to keep out prejudicial evidence. The State filed a motion asking the district court to find Lehane's statements to be voluntary and admissible. In ruling on those competing motions, the district court turned aside various objections Lehane raised to the evidence.

During the trial, Lehane's lawyer did not lodge contemporaneous objections to testimony about the photographs of the younger son and intermittently objected to testimony about the photographs of the daughter. We do not, however, rest our decision on that aspect of the trial record.

On appeal, Lehane has focused on K.S.A. 2016 Supp. 60-455 and contends the district court improperly applied the statute to admit the information about the photographs as other crimes evidence. We are unpersuaded. Pertinent here, K.S.A. 2016 Supp. 60-455 provides:

11

"(d) Except as provided in K.S.A. 60-445, and amendments thereto, in a criminal action in which the defendant is accused of a sex offense . . . evidence of the defendant's commission of another act or offense of sexual misconduct is admissible, and may be considered for its bearing on any matter to which it is relevant and probative."

Given the charges, the evidence about Lehane photographing his children falls within subsection (d) and, therefore, could be admitted to show his propensities and, in turn, to prove he acted on those propensities in sexually abusing his daughter and younger son. *State v. Smith*, 299 Kan. 962, 970, 327 P.3d 441 (2014). The evidence also would be admissible to prove intent, consistent with K.S.A. 2016 Supp. 60-455(b).

But a district court may exclude evidence otherwise admissible under K.S.A. 2016 Supp. 60-455 if its probative value is substantially outweighed by its undue prejudice to the defendant. *State v. Huddleston*, 298 Kan. 941, 961-62, 318 P.3d 140 (2014). A district court's ruling weighing probative value against undue prejudice will be reviewed on appeal for abuse of judicial discretion. *State v. Wilson*, 295 Kan. 605, Syl. ¶ 1, 289 P.3d 1082 (2012). We have already outlined that standard of appellate review. See *Darrah*, 309 Kan. at 1227.

Here, Lehane admitted photographing his daughter's naked buttocks, so the conduct is not disputed. That's a factor favoring the admissibility of otherwise relevant evidence under K.S.A. 2016 Supp. 60-455(d). See *State v. Boysaw*, 309 Kan. 526, 541, 439 P.3d 909 (2019) (court may consider "how clearly the prior an act was proved," the lapse of time, and the frequency of such acts, among other factors, in weighing admissibility of propensity evidence under K.S.A. 2016 Supp. 60-455[d]); *State v. Bowen*, 299 Kan. 339, 350, 323 P.3d 853 (2014) (clarity of proof of bad acts offered as propensity evidence under K.S.A. 60-455[d] factor in weighing probative value versus undue prejudice). The circumstances seem to suggest Lehane had an unusual, if not fetishistic, interest in his daughter's behind. He told the detective he took pictures of his

12

daughter that he should not have. That admission indicates Lehane considered the photographs to be prurient rather than innocent.

As charged, the State had to prove Lehane lewdly touched each child to arouse or satisfy his or the child's sexual desires. So Lehane's conduct and admissions about photographing his daughter were probative of that intent or propensity as to her. And the evidence was not unduly prejudicial for that purpose. We see no abuse of discretion in the district court's ruling in that respect.

The evidence that Lehane photographed his younger son necessarily presents a closer question, especially since he denied doing so. But the evidence is of a kind with his admission that he photographed his daughter. Assuming the evidence regarding his younger son had been improperly admitted and objection to it had been preserved in the district court, we do not see reversible error. The improper admission of evidence typically entails an error that does not implicate a defendant's constitutional rights. See *State v. Broxton*, 311 Kan. 357, 366, 461 P.3d 54 (2020) (erroneous exclusion of evidence); *State v. Torres*, 294 Kan. 135, 143-44, 273 P.3d 729 (2012) (erroneous admission of evidence). The disputed evidence here is of that character. See *Torres*, 294 Kan. at 143-44.  The error may be considered harmless if the State, as the benefited party, can show there was no reasonable probability the wrongfully admitted evidence affected the verdicts considering the trial record as a whole. *Broxton*, 311 Kan. at 366; *Ward*, 292 Kan. 541, Syl. ¶ 6. Taken as a component of the State's overall case against Lehane, the evidence about him photographing his younger son would not have played a significant part in the jury's decision to convict. We find the effect of that evidence to be marginal, especially given the plainly admissible evidence Lehane took nude photographs of his daughter.

*Prosecutor's Closing Argument*

Lehane contends two of the prosecutor's remarks in closing argument to the jurors were error and of sufficient gravity to deprive him of a fair trial. He says the comments were a deliberate and improper attempt to kindle sympathy for the victims and their mother.

We examine prosecutorial error with a revamped standard the Kansas Supreme Court initially outlined in *State v. Sherman*, 305 Kan. 88, 109, 378 P.3d 1060 (2016). The analytical model first considers whether an error has occurred and then weighs any prejudice to the defendant resulting from the error. Comments made during closing arguments will be considered error if they fall outside the wide latitude afforded a prosecutor in discussing the evidence and the law. 305 Kan. at 109. This simply transplanted the initial step in the former process, though substituting the term "error" for "misconduct," a more pejorative label at least connoting a deliberate violation of the rules even when there might be only an inadvertent mistake. 305 Kan. at 106-07.

If an appellate court finds the challenged argument to be prosecutorial error, it must then consider prejudice measured by the test set out in *Ward*, 292 Kan. 541, Syl. ¶ 6, for a constitutional wrong. The State, as the party benefiting from the error, must demonstrate "'beyond a reasonable doubt'" that the mistake "'did not affect the outcome of the trial'" taking account of the full trial record. *Sherman*, 305 Kan. at 109 (quoting *Ward*, 292 Kan. 541, Syl. ¶ 6). That is, the appellate court must determine if the error deprived the defendant of a fair trial—a constitutional protection rooted both in due process and in the right to trial itself. 305 Kan. at 98-99, 109. The prejudice analysis in *Sherman* replaced a multifactor standard that also considered the prosecutor's bad intent or ill will—breaches of professional conduct the court concluded could be more appropriately addressed in ways other than reversing a conviction in the absence of material prejudice. 305 Kan. at 114-15.

14

Lawyers, of course, may be expected to use closing argument to their respective clients' advantage with rhetorically striking arguments grounded in the law and evidence. *State v. King*, 288 Kan. 333, 351, 204 P.3d 585 (2009); *State v. Rodriguez*, 269 Kan. 633, 643, 8 P.3d 712 (2000) (closing argument not improper simply because of "impassioned . . . oratory" or "picturesque speech"). But prosecutors may not move beyond the boundaries of the law and evidence to invite verdicts based on compassion for a victim or on fearmongering aimed at a defendant. *State v. Thurber*, 308 Kan. 140, 162, 420 P.3d 389 (2018) (argument may not "'inflame the passions or prejudices of the jury'" diverting from facts and law); *State v. Anderson*, 294 Kan. 450, 463, 276 P.3d 200 (2012) (argument improper when designed to "obtain a conviction based on sympathy"). They have an overarching responsibility to see that criminal defendants receive fundamentally fair trials. *Sherman*, 305 Kan. at 105, 109; *State v. Pabst*, 268 Kan. 501, Syl. ¶ 6, 996 P.2d 321 (2000) (overarching "interest" of the State, and its legal representative, in criminal prosecution "is not that it shall win a case, but that justice shall be done").

Lehane's defense necessarily rested on discrediting the children and their accounts of his sexual misconduct. In the first part of her closing argument, the prosecutor talked about credibility and borrowed the phrase "flip the switch" that Lehane used with the detective in describing his ability to control his behavior around his children. The prosecutor told the jurors:

> "Flip on the switch? Great dad. Taking them to Worlds of Fun, take them to Coco Keys, taking them to the parks, buying them toys, giving them a house to live in, doing fun stuff. You heard the kids talk about it. They had fun times with their dad. They liked being around this man, he's their dad. They enjoy it.
>
> "What they don't enjoy is when he's in the room with them when they're trying to put their clothes on in the morning taking pictures of their naked bodies.
>
> "They don't hate their dad. This isn't about whether they liked or didn't like their dad. They enjoyed him, wanted to be around him. Fought to get in bed with him, fought

15

to hang out with him, wanted to be with their father. They just don't want him touching them when they're laying down cuddling with their dad as five, six, seven year old kids. They want to just be cuddling with their dad. They don't want their butts rubbed. They don't want their pee pee touched, they just want to lay and interact with their father appropriately."

The thrust of that portion of the closing argument drew on the children's statements about fun activities they shared with Lehane and how much they enjoyed those interactions and contrasted those circumstances with the inappropriate touching. The argument highlights evidence indicating the children did not hate Lehane and had no ulterior motive to make false accusations against him. What they did not like and did not want was the sexually driven conduct Lehane directed at them.

The remarks are fair comment on the evidence and the key issue in the case. They do not invoke some special sympathy for the children or sound a purely emotional chord divorced from the law and the evidence. Nor do they impermissibly call on the jurors to convict Lehane to shelter or vindicate either the children as victims or the community as the place all of them inhabit. Cf. *State v. Genzel*, No. 120,602, 2020 WL 3481499, at *7 (Kan. App. 2020) (unpublished opinion), *rev. denied* 312 Kan. __ (November 24, 2020) (The court finds prosecutorial error contributing to the reversal of a conviction when "[t]he prosecutor constructed a theme . . . advancing an impermissible emotional appeal to the jurors as guardian angels of victimized children rather than as objective finders of fact determining whether to convict a defendant.").

Lehane similarly complains about a briefer comment the prosecutor used in the rebuttal portion of her argument designed to defuse the defense suggestion the children's mother coached them to make false accusations. The comment, tied to a longer description of the mother's discussions with the children, was this: "[The mother] didn't know how to talk to her kids, okay? She describe[d] to you, devastated, trying to be strong for them, all the emotions, that she was told not to ask the kids about stuff, but she

does. She asked them. What's going on?" During the trial, mother testified, over Lehane's objection, that she wanted to help her children but understood the investigators' request she not ask about inappropriate touching. She also told the jurors she knew she had no forensic training to conduct sexual abuse interviews. Nonetheless, mother did on occasion speak to the children about what happened.

The prosecutor's comment was anchored in the trial evidence and properly addressed a defense argument. We find it to be fair comment.

In sum, the prosecutor's arguments Lehane cites on appeal came within the "wide latitude" afforded lawyers in making closing comments to jurors on the evidence and integrating that evidence with the governing legal principles in the jury instructions. They did not amount to prosecutorial error. We, therefore, need not and do not consider the second part of the *Sherman* test examining prejudice.

*Cumulative Error*

Lehane submits that if the trial errors he has identified do not individually require reversal of his convictions, their combined effect deprived him of a fair trial. Appellate courts will weigh the overall impact of multiple trial deficiencies and may grant relief if the "cumulative error" undercuts a defendant's fundamental right to a fair hearing. *State v. Harris*, 310 Kan. 1026, 1041, 453 P.3d 1172 (2019); *State v. Smith-Parker*, 301 Kan. 132, 167-68, 340 P.3d 485 (2014). An appellate court examines the entire trial record to assess the aggregate effect of serial trial errors. 301 Kan. at 167-68. The assessment takes into account "how the trial judge dealt with the errors as they arose; the nature and number of errors and their interrelationship, if any; and the overall strength of the evidence." *State v. Miller*, 308 Kan. 1119, 1176, 427 P.3d 907 (2018).

Here, we have identified one trial error—the district court's failure to give a unanimity instruction. And we have assumed a second error—the admission of testimony that Lehane took nude photographs of his younger son. For purposes of assessing cumulative error, we consider both of them. Without rehashing our earlier discussion, neither error materially degraded the fairness of Lehane's trial. This is not a situation in which each error caused demonstrable prejudice but not enough prejudice to warrant a reversal. The exceptionally limited effect of each error did not add up to reversible error considered together. Moreover, the errors were not such that they had a catalytic effect in which one exacerbated the impact of the other to generate a cumulative prejudice in which the whole exceed the sum of the parts. See *Smith-Parker*, 301 Kan. at 168 (noting multiple errors infecting jury deliberations). Lehane's argument for cumulative error is unavailing.

In closing, we mention Lehane has raised the denial of his motion for a new trial as a distinct point on appeal. But he identifies and briefs no additional issues the district court considered and rejected in ruling on the motion. So  we consider this merely repetitive of the other points Lehane has argued to us.

Affirmed.