IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 127,997

STATE OF KANSAS,
*Appellee*,

v.

MICHAEL A. PETERSON,
*Appellant*.

SYLLABUS BY THE COURT

A specific sentence pronouncement is evaluated in the context of the entire sentencing hearing.

Appeal from Ford District Court; ANDREW M. STEIN, judge. Submitted without oral argument May 15, 2025. Opinion filed August 22, 2025. Affirmed in part, vacated in part, and remanded with directions.

*Debra J. Wilson*, of Capital Appeals and Conflicts Office, was on the brief for appellant.

*Tyler W. Winslow*, assistant solicitor general, and *Kris W. Kobach*, attorney general, were on the brief for appellee.

The opinion of the court was delivered by

STEGALL, J.: On June 15, 2022, Michael Peterson murdered his 32-year-old girlfriend, K.V., and 4-year-old daughter, A.V., in their family home in Spearville. Later that night Peterson dumped K.V.'s body in a ditch next to a county road approximately 20 miles southeast from their home. Law enforcement determined that K.V. had been

1

brutally stabbed multiple times. Separately, Peterson discarded A.V.'s body in a dumpster in Kinsley, approximately 20 miles northeast of their home. Law enforcement determined that A.V.'s skull had been disconnected from her spine.

After dumping the bodies, Peterson attempted to clean up the home with carpet cleaner and peroxide and then called the police to report K.V. and A.V. missing. Peterson initially told officers that he had come home to find an intruder in the house.

Peterson was initially charged with capital murder, though he denied any involvement with their deaths. He later entered into a plea agreement with the State, pleading guilty to two counts each of felony murder and aggravated kidnapping. According to the plea, the parties agreed to allow argument at sentencing, to allow the consideration of evidence of aggravation, and to allow the court to hear victim impact statements. The agreement specifically acknowledged that the district court would ultimately decide whether to order concurrent or consecutive sentences.

Peterson requested that his hard 25 sentences run concurrent. The State requested that the district court order them to run consecutive. After hearing additional testimony, the district court imposed consecutive hard 25 sentences for the felony murders and ran the sentences for aggravated kidnapping concurrent. The district court then assessed "the fees that are mandatory" and stated an intention to "waive any fees that are not mandatory."

On appeal, Peterson argues the district court abused its discretion by ordering the consecutive hard 25 sentences. He also argues that the district court improperly included a domestic violence special program fee and a DNA database fee in the sentencing journal entry, in direct opposition to the court's stated intent to impose only mandatory fees.

DISCUSSION

*The district court did not abuse its discretion by ordering consecutive hard 25 sentences.*

We have recently discussed the applicable standard of review in *State v. Goens*, 317 Kan. 616, 535 P.3d 1116 (2023). There we said:

> "In most cases, '"it is within the trial court's sound discretion to determine whether a sentence should run concurrent with or consecutive to another sentence."' *State v. Baker*, 297 Kan. 482, 484, 301 P.3d 706 (2013). 'In fact, this principle of a judge's discretion is so entrenched that the legislature determined a defendant cannot raise the issue of whether imposing consecutive sentences is an abuse of discretion if the sentence is imposed under the Kansas Sentencing Guidelines Act (KSGA), K.S.A. 21-4701 et seq.' *State v. Mosher*, 299 Kan. 1, 2-3, 319 P.3d 1253 (2014). However, appellate courts can review consecutive sentences if one of the sentences is for an off-grid crime because the resulting controlling sentence is not entirely a presumptive sentence. *State v. Young*, 313 Kan. 724, 731-32, 490 P.3d 1183 (2021). '"[A] life sentence for an off-grid crime is not considered a 'presumptive sentence' under the KSGA."' *Baker*, 297 Kan. at 484. Because [a defendant's] sentence for felony murder is classified as an off-grid crime, the KSGA does not preclude our review. See *State v. Brune*, 307 Kan. 370, 371, 409 P.3d 862 (2018).

> "The standard for determining whether a district court abused its discretion is whether

> > 'judicial action (1) is arbitrary, fanciful, or unreasonable, i.e., if no reasonable person would have taken the view adopted by the trial court; (2) is based on an error of law, i.e., if the discretion is guided by an erroneous legal conclusion; or (3) is based on an error of fact, i.e., if substantial competent evidence does not support a factual finding on which a prerequisite conclusion of law or the exercise of discretion is based.' *Baker*, 297 Kan. at 484.

3

"[A defendant] has the burden to prove the trial court abused its discretion. To sustain his burden, he must show that no reasonable person would have taken the trial court's view.

"Neither our statutes nor our caselaw set definitive criteria for when a district court should order sentences to be served concurrently or consecutively. See *State v. Darrah*, 309 Kan. 1222, 1227, 442 P.3d 1049 (2019)." *Goens*, 317 Kan. at 619-20.

Because Peterson's felony murder convictions are off-grid crimes, we must ask whether the district court abused its discretion in ordering consecutive sentences. Framed another way, because Peterson does not allege an error of fact or law, our inquiry is limited to whether any reasonable person would have ordered Peterson to serve consecutive sentences.

At sentencing, the district court heard statements from the State's witnesses, including an investigator from the coroner's office and two special agents from the Kansas Bureau of Investigation, viewed exhibits displaying how the bodies had been dumped, heard victim impact statements and statements made by Peterson's family, and considered a report regarding Peterson's risk of future prison violence, and Peterson exercised his right to allocution. The judge acknowledged that all of this testimony had "provided [the court] much needed information and guidance in making this decision." Peterson acknowledged that the district court could consider this additional information and that the district court had the authority to order consecutive sentences.

After taking all of that into consideration, the district court stated that since the case had been pending for approximately two years, he had "plenty of time to think about it." The judge then discussed how the laws enacted by the Legislature reflect the views and morality of society and how those views frame the goals of a hard 25 sentence. The judge acknowledged the goals of sentencing as incapacitation, deterrence, retribution, and

4

rehabilitation and stated that he had considered those goals. The court then pronounced the hard 25 sentences as consecutive, resulting in a minimum sentence of 50 years without the possibility of parole.

We hold the judge's decision was reasonable. Though the facts in Peterson's plea agreement are bare, the additional testimony and exhibits at sentencing revealed several aggravating factors. Peterson brutally murdered his girlfriend, who was the mother of his child. He then brutally murdered his four-year-old daughter. He strapped his girlfriend's body to a ladder, wrapped her in a blanket, and discarded the body in a ditch. He also wrapped his daughter's body in a blanket and threw her away in a dumpster. Following this, Peterson tried to clean up the house before calling the police and repeatedly lying to them about what happened. Peterson admitted to the murders only after he was charged with capital murder and potentially faced the death penalty. Further, K.V.'s family indicated a preference for a harsher sentence.

Peterson's case, and the district court's considerations, fall well within the realm of other cases in which we have affirmed consecutive sentences. See *State v. Darrah*, 309 Kan. 1222, 1227-28, 442 P.3d 1049 (2019) (court made no specific findings of fact, but acted reasonably because defendant was central to the conspiracy and acted as a leader in the commission of the crimes); *State v. Brune*, 307 Kan. 370, 371-73, 409 P.3d 862 (2018) (considering evidence of planning, the egregiousness and brutality of the murder, the lack of legitimate provocation, lack of responsibility); *State v. Horn*, 302 Kan. 255, 257-58, 352 P.3d 549 (2015) (defendant's decision to murder a child who could be a witness against him was especially heinous and the defendant had a lack of regard for others' safety by setting an apartment building on fire); *State v. Wilson*, 301 Kan. 403, 406-07, 343 P.3d 102 (2015) (defendant's shooting and/or attempted shooting of his five neighbors was unprovoked); *State v. Mosher*, 299 Kan. 1, 3-4, 319 P.3d 1253 (2014) (court considered the amount of planning and effort that went into the murder and how it could have been avoided); *State v. Baker*, 297 Kan. 482, 484-85, 301 P.3d 706 (2013)

(brutality of the murder of an innocent baby was not offset by a showing of remorse, acceptance of responsibility, or a decision to enter a plea); *State v. Ross*, 295 Kan. 1126, 1138-39, 289 P.3d 76 (2012) (court considered the suffering of the victim, defendant's lack of compassion, and the extent of harm to the victim's family).

We hold that a reasonable person could have concluded that consecutive sentences were appropriate. Therefore, the district court did not abuse its discretion in ordering Peterson to serve consecutive hard 25 sentences for his felony murder convictions.

*Domestic Violence Designation and Fee*

On the journal entry, the district court designated the crimes as domestic violence offenses. The district court also ordered Peterson to pay a domestic violence special program fee. Peterson argues that the district court never made a specific factual finding regarding the domestic violence designation. Peterson also argues that regardless of whether the domestic violence designation is correct, the domestic violence special program fee was improperly assessed. Peterson argues that the special program fee is a discretionary fee, and its inclusion in his sentence was contrary to the district court's stated intent. Regarding the domestic violence special program fee, the State concedes the district court erred. We agree.

K.S.A. 20-369 created the domestic violence special program fee. Pursuant to K.S.A. 20-369, a court "may impose a fee as provided in this section . . . against any defendant found to have committed a domestic violence offense . . . in an amount not to exceed $100 per case." The statute's use of the permissive "*may*" leaves the decision to impose the fee to the discretion of the district court. See *Plains Transport of Kansas, Inc. v. Baldwin*, 217 Kan. 2, 5, 535 P.2d 865 (1975) (statute's use of the word "may" leaves the "matter to the sound discretion of the district court").

6

The record clearly indicates that the district court intended to waive all nonmandatory fees. The district court specifically assessed "the fees that are mandatory" and stated an intention to "waive any fees that are not mandatory." The district court went on to say that it was not entirely sure of the limits of its discretion to waive fees, stating:

> "I don't know if, my discretion, if I can waive court costs, DNA database fee, and the advocacy fee. So, the fees that are mandatory, mandated by statute, will be assessed. And, just to clarify those, it looks like the court costs, DNA database fee, Domestic Violence Special Program Fee, $400.00 Child Advocacy Center assessment fee, those will be assessed."

Accordingly, we find that the district court erred by imposing in the journal entry the nonmandatory domestic violence special program fee when the sentence pronouncement had explicitly waived all nonmandatory fees.

With this simple issue clarified, we turn to Peterson's argument that the district court improperly made a domestic violence designation. Though Peterson argues he had no notice of a domestic violence designation, the Presentence Investigation Report designated the charges as domestic violence crimes. Peterson is correct, however, that the designation does not appear elsewhere in the record—including the district court's sentencing pronouncement—until the journal entry. Additionally, the district court did not order or pronounce a domestic violence assessment pursuant to K.S.A. 21-6604(p).

Peterson alleges that because a domestic violence designation was not pronounced from the bench, its inclusion in the journal entry cannot make the designation a part of his sentence. *Abasolo v. State*, 284 Kan. 299, Syl. ¶ 3, 160 P.3d 471 (2007). "'A sentence is effective when pronounced from the bench.'" *State v. Weekes*, 308 Kan. 1245, 1249, 427 P.3d 861 (2018). Once the district court pronounces a legal sentence, it generally loses jurisdiction to modify that sentence except to correct mathematical or clerical errors. *State v. Johnson*, 309 Kan. 992, 996, 441 P.3d 1036 (2019).

A specific sentence pronouncement, however, is evaluated in context of the entire sentencing hearing. *State v. Juiliano*, 315 Kan. 76, 81, 504 P.3d 399 (2022) (evaluating the meaning of a sentence based on the context of the entire sentencing hearing). And while a domestic violence designation was not specifically "pronounced," the district court did discuss the imposition of the domestic violence fee. In cases where the law mandates a specific sentence, we have allowed a district court to make corrections without a new sentencing hearing. See *State v. Hill*, 313 Kan. 1010, 1015, 492 P.3d 1190 (2021) ("[B]oth the Kansas Supreme Court and other Court of Appeals panels have allowed a journal entry to 'clarify a sentence where the sentence pronounced from the bench was silent on the matter and the law mandated a certain result,' relying on *Love v. State*, 280 Kan. 553, 124 P.3d 32 [2005]."); *State v. Boswell*, 314 Kan. 408, 418, 499 P.3d 1122 (2021); *State v. Phillips*, 309 Kan. 475, 478, 437 P.3d 961 (2019). Thus, we consider whether our law mandates a certain result in this case.

Under K.S.A. 22-4616, "if there is evidence that the defendant committed a domestic violence offense, the trier of fact shall determine whether the defendant committed a domestic violence offense." Following such a finding "the court shall place a domestic violence designation on the criminal case and the defendant shall be subject to the provisions of subsection (p) of K.S.A. 21-6604."

K.S.A. 21-6604(p) requires a defendant "[u]ndergo a domestic violence offender assessment conducted by a certified batterer intervention program" "for any criminal offense that includes the domestic violence designation pursuant to K.S.A. 22-4616." In his brief to this court, Peterson acknowledges that a domestic violence offender assessment is mandatory following a finding that a case is a domestic violence case.

For context, "domestic violence" and "domestic violence offense" are defined in K.S.A. 21-5111(i)-(j) as:

8

"(i) 'Domestic violence' means *an act* or threatened act of *violence against a person with whom the offender is involved or has been involved in a dating relationship, or an act or threatened act of violence against a family or household member by a family or household member.* 'Domestic violence' also includes any other crime committed against a person or against property, or any municipal ordinance violation against a person or against property, when directed against a person with whom the offender is involved or has been involved in a dating relationship or when directed against a family or household member by a family or household member. For the purposes of this definition:

(1) 'Dating relationship' means a social relationship of a romantic nature. In addition to any other factors the court deems relevant, the trier of fact may consider the following when making a determination of whether a relationship exists or existed: Nature of the relationship, length of time the relationship existed, frequency of interaction between the parties and time since termination of the relationship, if applicable.

(2) *'Family or household member' means persons 18 years of age or older who are spouses, former spouses, parents or stepparents* **and** *children or stepchildren, and persons who are presently residing together or have resided together in the past, and persons who have a child in common regardless of whether they have been married or have lived together at any time.* 'Family or household member' also includes a man and woman if the woman is pregnant and the man is alleged to be the father, regardless of whether they have been married or have lived together at any time.

"(j) 'Domestic violence offense' means any crime committed whereby the underlying factual basis includes an act of domestic violence." (Emphases added.)

The record clearly establishes that Peterson's crimes fall under these definitions and that the district court said enough during the sentence pronouncement to establish this fact, albeit with a lack of clarity. The district court pronounced the imposition of the domestic violence special program fee and made domestic violence designations on the journal entry. Thus, the designation was not error and has support in the full context of

9

the sentence pronouncement. The district court did err by not ordering a domestic violence assessment under K.S.A. 21-6604(p). This error may be corrected by a journal entry clarification on remand.

*The district court did not err by ordering the DNA database fee.*

Lastly, Peterson argues that the district court erred by imposing the DNA database fee because it was waived as nonmandatory during the pronouncement. The DNA database fee is authorized in K.S.A. 75-724. Specifically, K.S.A. 75-724(c) states that "[t]he court *shall not lessen or waive such fees unless* the court has determined such person is indigent *and the basis for the court's determination* is reflected in the court's order." (Emphases added.)

Peterson argues that the record at sentencing shows that the court found him to be indigent. The court considered his "very minimal opportunity to earn any income" and the impact a "life term" has on "Defendant's ability to earn income" and therefore waived attorney fees and any application fees. The court also stated, as noted previously, that "in light of the incarceration, the court is going to waive any fees that are not mandatory." The court went on to say it was unsure whether it could waive the DNA database fee.

The journal entry reflects that the district court considered the defendant's financial resources in the context of the BIDS application and attorney fees pursuant to K.S.A. 22-4513. In light of those considerations, the DNA database fee was still assigned and no additional order explaining the basis for a specific finding of indigency was attached. The district court did not waive the fee under the terms of K.S.A. 75-724(c). Absent a specific determination of indigency explained in the court's order, a district court lacks the discretion to waive the database fee. Consequently, we find the district court properly assessed the DNA database fee.

10

CONCLUSION

We affirm the district court's decision to impose consecutive hard 25 sentences and the assessment of the DNA database fee. We remand the case to the district court with directions to correct the journal entry to clarify Peterson's sentence as it relates to the required domestic violence assessment under K.S.A. 21-6604(p), and to vacate the domestic violence special program fee.

Affirmed in part, vacated in part, and remanded with directions.

WILSON, J., not participating.